# GLENN JONES v. STATE OF MARYLAND

[No. 130, September Term, 1982.]

*Decided May 27, 1983.*

*Per Curiam on Motion For Reconsideration filed September 9, 1983.*

*Motion for reconsideration filed by appellee on June 17, 1983; opposition to motion for reconsideration filed on June 23, 1983; motion denied on September 9, 1983. See per curiam filed on September 9, 1983, at page 21 infra.*

The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

*Mark Colvin* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

Couch, J., delivered the opinion of the Court. MENCHINE, J., dissents and filed a dissenting opinion at page 19 *infra.* Per Curiam on Motion For Reconsideration at page 21 *infra.*

Having been found guilty, in a jury trial in the Criminal Court of Baltimore, of felony murder, robbery, and use of a handgun in the commission of a crime of violence, Glenn Jones appealed to the Court of Special Appeals. We granted his petition for a writ of certiorari prior to consideration by that court in order to resolve a question of public importance. In doing so, we are of necessity compelled to consider all issues raised by Jones in his appeal, which are as follows:

1. Did the trial court err in refusing to permit defense counsel to inspect the grand jury testimony of two key prosecution witnesses for purposes of cross-examination and impeachment?
2. Was the out-of-court photographic identification of Appellant so suggestive and conducive to misidentification as to deny him due process of law?
3. Did the trial court abuse its discretion in failing to take any corrective action after the prosecution referred to matters not in evidence during closing argument?
4. Was Appellant improperly convicted of, and sentenced for, both felony murder and the underlying felony?

Because of the nature of the questions raised, little need be said regarding the underlying facts of the crime giving

rise to Jones's conviction. Suffice it to say that Leonard Holland was shot and killed during the course of a robbery witnessed by Kevin Lawson. Lawson subsequently picked Jones's picture from a photographic array as the person who shot Holland, and later made a similar in-court identification. He explained he had gone to school with Jones and had known him for some time.

(1)

Although Jones, prior to trial, had sought to inspect the grand jury testimony of the State's principal witnesses, Clanton and Lawson, he makes no issue here of the denial of that motion. He does assert error, however, in the denial of a similar motion made after each of these witnesses had completed his direct testimony for the State. The record reveals that the trial judge had denied the motion as to Clanton after reviewing Clanton's grand jury testimony in camera and concluding that it was not "substantially or significantly different" from that given at trial. As to Lawson, however, the trial judge concluded that his grand jury testimony did vary, in some respects, from his trial testimony and thus made available to Jones those portions of the grand jury testimony of Lawson which did vary. We note that no use of such testimony was made during cross-examination by Jones's counsel. The record makes clear that the trial judge reasoned that since *his examination* of the grand jury testimony of Clanton showed no significant inconsistencies, there was no "particularized need" for access to such testimony. In our view, the trial judge, albeit well-meaning, misconceived the meaning of "particularized need," requiring us to reverse the convictions in this case. We explain.

The parties appear to be in agreement that, consistent with the need for secrecy surrounding grand jury proceedings, there is no absolute right to inspect grand jury testimony prior to trial. Jones argues, however, that he had the right to such inspection once the witnesses had testified

on direct. He also argues, alternatively, that once a "particularized need" was shown, he then had the right to inspect. The State, on the other hand, argues that automatic disclosure of grand jury material is not required, but if a "particularized need" is shown, such disclosure may be had after the witness has testified on direct. We perceive from the record and briefs that what constitutes "particularized need" is misunderstood by the parties and the trial judge. Furthermore, there is disagreement with respect to the mechanism to be used for disclosure.

Heretofore we have not had the occasion to deal with this precise problem [1] directly although it has been alluded to. *See Attorney Grievance Comm'n v. Strathen,* 287 Md. 111, 117, 411 A.2d 102, 105-106 (1980), where Chief Judge Murphy said for the Court:

> "Attorney disciplinary proceedings before an Inquiry Panel upon a complaint that an attorney has committed an act of misconduct are similar in purpose to the accusatory proceedings conducted by a grand jury. *See Attorney Griev. Comm'n v. McBurney,* 282 Md. 116, 383 A.2d 58 (1978). It is true, of course, that in a proper case an accused may, at trial, be afforded access to grand jury minutes for purposes of cross-examination or impeachment if he demonstrates a 'particularized need' for disclosure. *See Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); *Silbert v. State,* 12 Md. App. 516, 280 A.2d 55 (1971)."

We recognize that throughout our sister jurisdictions, three distinct positions have been taken regarding disclosure of

---

1. But see Carr v. State, 284 Md. 455, 397 A.2d 606 (1979), where the trial court's refusal to compel production of a statement, after a witness had testified, amounted to a denial of due process. *See also State v. Leonard,* 290 Md. 295, 429 A.2d 538 (1981), *aff'g* 46 Md. App. 631, 421 A.2d 85 (1980).

grand jury testimony. Some courts have concluded that once a state's witness has testified on direct examination, his grand jury testimony is subject to inspection by a defendant for the purpose of cross-examination or impeachment. *See, e.g., State v. Superior Court In and For County of Maricopa,* 95 Ariz. 319, 390 P.2d 109 (1964); *People v. Johnson,* 31 Ill.2d 602, 203 N.E.2d 399 (1964); *Antrobus v. State,* 253 Ind. 420, 254 N.E.2d 873 (1970); *State v. Cuevas,* 282 N.W.2d 74 (Iowa 1979); *Commonwealth v. Edgerly,* 372 Mass. 337, 361 N.E.2d 1289, 1292 n.3 (1977); *People v. Wimberly,* 384 Mich. 62, 179 N.W.2d 623 (1970); *State v. Tate,* 47 N.J. 352, 221 A.2d 12 (1966); *State v. Felter,* 85 N.M. 619, 515 P.2d 138 (1973); *People v. Rosario,* 9 N.Y.2d 286, 173 N.E.2d 881, 213 N.Y.S.2d 448 (1961); *State v. Miner,* 128 Vt. 55, 258 A.2d 815 (1969).

On the other hand, certain jurisdictions have held that a defendant is not entitled to inspection of a witness's grand jury testimony, even for cross-examination purposes. *See, e.g., State v. Prestridge,* 399 So.2d 564 (La. 1981); *State v. Porter,* 303 N.C. 680, 281 S.E.2d 377 (1981).

Finally, a number of courts have held that a defendant is not entitled to inspection for impeachment on cross-examination unless a "particularized need" is shown. *See, e.g., State v. Doody,* 432 A.2d 399 (Me. 1981); *State v. Baca,* 85 N.M. 55, 508 P.2d 1352 (1973); *State v. Palmigiano,* 112 R.I. 348, 309 A.2d 855 (1973); *Mott v. State,* 543 S.W.2d 623 (Tex. Crim. App. 1976).

As stated above, we have previously indicated that we looked with approval on the "particularized need" requirement. *Strathen, supra. See also Thomas v. State,* 50 Md. App. 286, 437 A.2d 678 (1981), *cert. denied,* 292 Md. 639, 437 A.2d 678 (1982). The Supreme Court of the United States likewise has opted for the "particularized need" requirement. *See Douglas Oil Co. of Cal. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); *United States v.*

*Procter & Gamble Co.,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). It is observed that, as noted in these cases, rule 6(e) of the Federal Rules of Criminal Procedure provides, *inter alia,* that disclosure of grand jury testimony may be made "preliminarily to or in connection with a judicial proceeding . . ." and that the matter lies within the discretion of the trial judge. No such similar rule exists in Maryland and, of course, we are not bound to follow the federal rule here. The problem is what does a defendant have to offer to demonstrate a "particularized need," keeping in mind that until a witness's grand jury testimony is disclosed, there is no way a defendant can determine whether such testimony varied from the trial testimony so as to be of any use on cross-examination.

In *Proctor & Gamble, supra,* Mr. Justice Douglas stated in pertinent part:

> "We do not reach in this case problems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.[7] *Those are cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly."* 356 U.S. at 683, 78 S.Ct. at 986-87, 2 L.Ed.2d at 1082 (emphasis supplied).

---

"7. See e.g., *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 234 [60 S.Ct. 811, 849, 84 L.Ed.2d 1129, 1174 (1940)]. Cf. *Jencks v. United States,* 353 U.S. 657 [77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957)]." 356 U.S. at 683, 78 S.Ct. at 987, 2 L.Ed.2d at 1082.

Again, in *Dennis, supra,* the Supreme Court quoted from its opinion in *Procter & Gamble* to the effect that:

> " '[P]roblems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility . . .', are 'cases of particularized need where the secrecy of the proceedings is lifted. . . .' " 384 U.S. at 870, 86 S.Ct. at 1849, 16 L.Ed.2d at 984 (citation omitted).

*Accord Douglas Oil, supra,* where the Supreme Court observed, "the typical showing of particularized need arises when a litigant seeks to use 'the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.'" 441 U.S. at 222 n. 12, 99 S.Ct. at 1674, 60 L.Ed.2d at 167 (quoting *Procter & Gamble).* Moreover, in *Pittsburgh Plate Glass, supra,* the Supreme Court concluded that "a preliminary showing [of contradiction between the witness's trial and grand jury testimony] would not, of course, be necessary." 360 U.S. at 400-01, 79 S.Ct. at 1241, 3 L.Ed.2d at 1327. In *Pittsburgh Plate Glass,* the Court held that the defense had failed to show the existence of a "particularized need," pointing out that "the petitioners [had] failed to show *any need whatever* for the testimony of the witness[,]" *Id.* (emphasis added).[2] Rather, the petitioners' contention was that they had an *absolute right* to disclosure of the grand jury testimony.

We believe the reasoning of these cases to be persuasive, for in the usual situation, without seeing the grand jury testimony first, a defendant would be incapable of showing a more detailed particularized need. Accordingly, we hold that

---

**2.** Here, in our view, it is patent that a "particularized need" was shown when, during cross-examination, Clanton admitted that he had initially lied to the police about who was involved in the incident. Clanton testified in pertinent part:

"I lied to him [Detective Segreti].

\* \* \*

I told him that it was me, Glen, Kevin and some other people because he said he would let me go. At the time I was scared because I had never been arrested before.

\* \* \*

What was the lie? I told him that we had did it and but I had put some other peoples name in it that wasn't there.

\* \* \*

[B]ut I told him that at the time, I told him that I didn't have nothing to do with it."

In addition, Lawson's testimony during cross-examination was that when the police questioned him at the scene of the incident "[he] was scared [,]" and "[he] wasn't truthful."

after a State's witness has testified on direct examination, a defendant is entitled to inspect the grand jury testimony for cross-examination purposes without any requirement that he show any other need.

Furthermore, we hold that the procedure suggested by the State, and followed in some jurisdictions, of having the trial judge inspect the grand jury testimony to determine whether inconsistencies exist or whether that testimony would be of use to the defendant, as was done in this case, is improper. Because what the Supreme Court said on this point in *Dennis* is so persuasive, we set it out in full:

> "In *Pittsburgh Plate Glass,* [360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959)] the Court reserved decision on the question whether *in camera* inspection by the trial judge is an appropriate or satisfactory measure when there is a showing of a 'particularized need' for disclosure. 360 U.S. at 401 [, 79 S.Ct. at 1241]. This procedure, followed by production to defense counsel in the event the trial judge finds inconsistencies, has been adopted in some of the Courts of Appeals. In the Second Circuit it is available as a matter of right. While this practice may be useful in enabling the trial court to rule on a defense motion for production to it of grand jury testimony — and we do not disapprove it for that purpose — it by no means disposes of the matter. Trial judges ought not to be burdened with the task or the responsibility of examining sometimes voluminous grand jury testimony in order to ascertain inconsistencies with trial testimony. In any event, 'it will be extremely difficult for even the most able and experienced trial judge under the pressures of conducting a trial to pick out all of the grand jury testimony that would be useful in impeaching a witness.' *Pittsburgh Plate Glass,* 360 U.S. at 410 [, 79 S.Ct. at 1246] (dissenting opinion). Nor is it realistic to assume that the trial court's judgment as to the utility of material for

impeachment or other legitimate purposes, however conscientiously made, would exhaust the possibilities. In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." 384 U.S. at 874-75, 86 S.Ct. at 1851, 16 L.Ed.2d at 986 (footnotes omitted).

See also Jencks v. United States, 353 U.S. 657, 669, 77 S.Ct. 1007, 1014, 1 L.Ed.2d 1103, 1112 (1957), where the Court specifically disapproved a "practice of producing government documents to the trial judge for his determination of relevancy . . . without hearing the accused. . . ."

In Commonwealth v. Hamm, 474 Pa. 487, 378 A.2d 1219, 1225 (1977), the Supreme Court of Pennsylvania, when considering whether an in camera review of prior statements of prosecution witnesses by the trial court was adequate to protect a defendant's interest, concluded that it was not. In pertinent part, that Court stated:

"We believe that defense counsel can better evaluate whether the prior statements relate to the subject matter of a witness' direct testimony. Statements which on their face do not appear to bear upon the direct testimony may actually be relevant once defense counsel brings to the court's attention other information counsel has developed through his investigation and preparation of the defense. We recognize that the trial court has the ultimate responsibility to determine whether the prior statements may be used in cross-examining the witness or are otherwise admissible. However, like other evidentiary rulings, these determinations are properly made in an adversary context. We do not believe that the trial court can determine the value that prior statements may have to the defense without hearing defense argument after inspection."

*Accord, Commonwealth v. Stewart,* 365 Mass. 99, 309 N.E.2d 470, 474-75 (1974) (involving a witness's grand jury testimony).

We see no difficulty with the trial judge reviewing the witnesses' grand jury testimony and excising those matters which do not relate to the subject case, but he should not be making decisions as to what is or is not inconsistent or immaterial to the defendant's case.

In view of the above, it follows that the trial judge erred here. We do not believe it appropriate for this Court to review the trial testimony of Clanton and Lawson for the same reasons outlined above with respect to the trial judge; not doing so, we cannot apply the harmless error rule. Accordingly, we must reverse.

### (2)

Jones contends that he has been denied due process because the photographic identification by Lawson was impermissibly suggestive. This is so, it is argued, because the identification occurred some two and a half months subsequent to the shooting incident and because the photographic array, consisting of five photographs, did not include photographs of Perkins Clanton or Kevin Scofield.[3] Jones further asserts that Lawson's in-court identification was tainted and evidence of both the extrajudicial and judicial identifications should be excluded.

We have reviewed the record, including the photographs, and find no merit to Jones's argument. Considering the facts of this case, the photographic identification procedure was not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968). *See also Foster & Forster v. State,* 272 Md. 273, 287, 323 A.2d 419, 426 (1974), *cert.*

---

3. Lawson's statement to the police on February 24, 1981, was that Clanton, Scofield, and Jones were involved in the shooting.

*denied,* 419 U.S. 1036, 95 S.Ct. 520, 42 L.Ed.2d 311 (1974); *Meyer v. State,* 43 Md. App. 427, 440, 406 A.2d 427, 436 (1979), *cert. denied,* 446 U.S. 938, 100 S.Ct. 2159, 64 L.Ed.2d 792 (1980). The testimony at the hearing on the motion to suppress was that after Lawson made a statement to Detective Segreti, he was shown five photographs and asked if "[he] recognize[d] any of them." He selected Jones as being the one who committed the shooting. Defense counsel was afforded the opportunity to cross-examine both Lawson and Segreti. The testimony of Lawson and Segreti was substantially consistent regarding the procedures followed and the fact that Segreti did not suggest which photograph Lawson should select. Moreover, Lawson testified that he was acquainted with Jones prior to the shooting incident and in fact had gone to school with him. Accordingly, the trial judge did not err in denying Jones's motion to suppress the identification.

### (3)

In light of our conclusion on issue one above, we need not address appellant's complaint concerning improper argument by the prosecutor.

### (4)

As to the appellant's final argument that he was improperly convicted of both felony murder and the underlying felony, the State concedes error and agrees that the appellant's conviction and sentence should be vacated. We agree.

> *Convictions for felony murder and use of a handgun in the commission of a crime of violence reversed and case remanded for a new trial.*
> *Conviction and sentence for robbery vacated.*
> *Costs to be paid by Mayor and City Council of Baltimore.*

*Menchine, J. dissenting:*

In my view, the Appellant has shown no more than that a witness at trial had testified before the grand jury. This is not enough to lift the secrecy of grand jury proceedings.

This precise issue has been considered by the Supreme Court of the United States. I would not depart from that Court's holding in *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 399 et seq., 3 L. Ed. 2d 1323, 1326, et seq., 79 S. Ct. 1237, 1241, wherein it was said:

> "Petitioners argue, however, that the trial judge's discretion under Rule 6 (e) must be exercised in accordance with the rationale of Jencks; namely, upon a showing on cross-examination that a trial witness testified before the grand jury — and nothing more — the defense has a 'right' to the delivery to it of the witness' grand jury testimony.
>
> This conclusion, however, runs counter to 'a long-established policy' of secrecy, United States v. Procter & Gamble Co. supra (356 US at 681), older than our Nation itself. The reasons therefor are manifold, id., at 682, and are compelling when viewed in the light of the history and modus operandi of the grand jury. Its establishment in the Constitution 'as the sole method for preferring charges in serious criminal cases' indeed 'shows the high place it [holds] as an instrument of justice.' Costello v. United States, 350 US 359, 362, 100 L ed 397, 401, 76 S Ct 406 (1956).

\* \* \*

> Ever since this action by the Fathers, the American grand jury, like that of England, 'has convened as a body of laymen, free from technical rules, acting in secret, pledged to indict no one because of

prejudice and to free no one because of special favor.' Ibid. Indeed, indictments may be returned on hearsay, or for that matter, even on the knowledge of the grand jurors themselves. Id 350 US at 362, 363. To make public any part of its proceedings would inevitably detract from its efficacy. Grand jurors would not act with that independence required of an accusatory and inquisitorial body. Moreover, not only would the participation of the jurors be curtailed, but testimony would be parsimonious if each witness knew that his testimony would soon be in the hands of the accused.

\* \* \*

It does not follow, however, that grand jury minutes should never be made available to the defense. This Court has long held that there are occasions, see United States v. Procter & Gamble Co. supra (356 US at 683), when the trial judge may in the exercise of his discretion order the minutes of a grand jury witness produced for use on his cross-examination at trial. Certainly 'disclosure is wholly proper where the ends of justice require it.' United States v. Socony-Vacuum Oil Co. supra (310 US at 234).

*The burden, however, is on the defense to show that 'a particularized need' exists for the minutes which outweighs the policy of secrecy. We have no such showing here. As we read the record the petitioners failed to show any need whatever for the testimony of the witness Jonas. They contended only that they had a 'right' to the transcript because it dealt with subject matter generally covered at the trial."* (Emphasis supplied)

The lifting of grand jury secrecy to defense counsel is the equivalent of lifting it to the world, for counsel would have the right, indeed perhaps the duty, to disclose to his client what he finds in the transcript. Thus the safety of the wit-

ness may be put at risk because the transcript discloses names or events inimical to the accused or named but unindicted individuals may thereby be subjected to obloquy or physical danger.

Such risks and dangers must, of course, be accepted when the defense shows that "a particularized need exists for the minutes which outweighs the policy of secrecy." *Pittsburgh Plate Glass Co. v. United States, supra.* No such showing has been made here.

## ON MOTION FOR RECONSIDERATION

PER CURIAM:

The State has filed a motion for reconsideration of our holding that after a State's witness has testified on direct examination, a defendant is entitled to inspect the grand jury testimony for cross-examination purposes without any requirement that he show any other need. The State has urged us to withdraw our holding in *Jones* and return "to the flexible interpretation of the 'particularized need' standard enunciated by [Chief] Judge Murphy in *Silbert v. State,* [12 Md. App. 516, 523-24, 280 A.2d 55, 60 (1971), *cert. denied,* 263 Md. 720 (1971)]." Alternatively, the State has submitted various questions and requested that we answer them in order to clarify certain issues.

We decline to grant the State's motion for reconsideration for the reasons set forth in the opinion. Nevertheless, in the interests of judicial economy, we shall grant the State's request for clarification with respect to (1) whether all grand jury testimony must be recorded and transcribed, (2) the basis for the Court's holding, i.e., constitutional or common law, and (3) whether our holding has retrospective or prospective application.

22

(1)

Preliminarily, we point out that by section 2-503, Courts and Judicial Proceedings Article, Maryland Code (1974, 1980 Repl. Vol.), the legislature has provided that "[t]he jury judge of the circuit court for a[ny] county may appoint a stenographer to take and transcribe the testimony given before the grand jury for the exclusive use and benefit of the grand jury and the State's attorney of the county unless otherwise ordered by the court." Thus it is patent that the jury judge has discretionary power to so appoint a stenographer but is not mandated to do so. Our decision in *Jones* was not intended to mandate the recording and transcription of *all* grand jury testimony as such a holding would be in contravention of section 2-503. Furthermore, we believe that whether to require transcription of recorded grand jury testimony in a particular case is a matter for the discretion of the grand jury or the State's Attorney and ultimately for the jury judge, whose judgment ought not to be disturbed absent an abuse of said discretion. In *Jones,* the witnesses' testimony before the grand jury had been recorded and transcribed (presumably at the request and expense of the State) and thus was available. Under such circumstances, the defendant should be given access to the transcript for purposes of cross-examination. As the Supreme Court observed in *Dennis v. United States,* 384 U.S. 855, 873, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973, 985 (1966), "[i]n our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact." (Footnote omitted). Moreover, in our view, under section 2-503, the jury judge has the discretionary power to order grand jury testimony to be recorded and transcribed at the request of the defendant as well as the State. Where such testimony is transcribed at the request of the defendant, it should be at the expense of the defendant.

(2)

The rule of secrecy surrounding grand jury proceedings is a product of the common law and "is designed to protect the jury from outside interference or pressure [.]" *See Piracci v. State,* 207 Md. 499, 515, 115 A.2d 262, 269 (1955) and *Coblentz v. State,* 164 Md. 558, 566-67, 166 A. 45, 49 (1933). *See also In Re Report of Grand Jury,* 152 Md. 616, 137 A. 370 (1927). Nevertheless, there are instances when the reason for the rule may disappear, particularly where the jury has returned an indictment and the accused is apprehended. *See* 38 Am. Jur. 2d, *Grand Jury,* § 41 (1968). *See also Dennis v. United States, supra,* 384 U.S. at 870, 86 S.Ct. at 1849, 16 L.Ed.2d at 983-84; *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323, 1327 (1959); *United States v. Procter & Gamble Co.,* 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077, 1082 (1958); *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 233-34, 60 S.Ct. 811, 849, 84 L.Ed. 1129, 1174 (1940). As stated in American Jurisprudence:

> "The rule of secrecy concerning matters transpiring in the grand jury room, it has been said, is not designed for the protection of witnesses before the grand jury, but for that of the grand jurors, and in furtherance of the public justice. The witness has no privilege of having his testimony treated as a confidential communication, but must be considered as testifying under all the obligations of an oath in a judicial proceeding; hence his testimony may be disclosed wherever it becomes material to the administration of justice." 38 Am. Jur. 2d, *Grand Jury,* § 41 (1968).

Likewise, the right of cross-examination is a matter of common law evidence. Professor Wigmore in his treatise on Evidence points out that:

> "For two centuries past, the policy of the Anglo-American system of evidence has been to regard the necessity of testing by cross-examination

as a vital feature of the law." 5 Wigmore, Evidence § 1367 (1974).

While it is true that the right of cross-examination may be said to be embodied in the right of confrontation contained in the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights, nevertheless, it is of common law origin; our holding is based on common law principles of procedure and evidence.

### (3)

With respect to the State's inquiry whether our holding in *Jones* will be given retrospective or prospective application, it is essential that it be understood just what the holding was. In essence, we held that after a State's witness had testified in chief, the accused was entitled to see that witness's transcribed grand jury testimony for use in cross-examination which was a "particularized need," without any other showing of need. What the holding did was to explain what "particularized need" was. Previously, by dictum in *Attorney Grievance Comm'n v. Strathen,* 287 Md. 111, 117, 411 A.2d 102, 105-06 (1980), Chief Judge Murphy had stated, in pertinent part:

> "It is true, of course, that in a proper case an accused may, at trial, be afforded access to grand jury minutes for purposes of cross-examination or impeachment if he demonstrates a 'particularized need' for disclosure." (Citations omitted).

Consequently, the *Jones* holding was not a change of the law; it merely explained the "particularized need" referred to in *Strathen.* There was no overruling of a prior decision or overruling of an interpretation by this Court, and there was no change in the common law. Therefore, the issue of

retroactivity is not presented.[1] *Cf. State v. Hicks,* 285 Md. 310, 336, 403 A.2d 356, 370 (1979) (On Motion for Reconsideration) (per curiam), where we stated:

> "We recognize that our initial opinion in this case did not overrule any prior interpretation of Rule 746. Nevertheless, the critical language of Rule 746, upon which our decision in this case was based, was essentially unchanged from the language in Art. 27, § 591, which was incorporated by reference in former Rule 740 and was construed as being only directory in *Young v. State* [15 Md. App. 707, 292 A.2d 137, summarily aff'd, 266 Md. 438, 294 A.2d 467 (1972)], *supra.* Consequently, our holdings in the instant case did overrule a prior interpretation of the same language and did set forth a new interpretation of that language. Thus, the case is an appropriate one for considering whether such new interpretation should be given only prospective effect."

Opinion clarified and, as clarified, the motion for reconsideration is denied.

---

1. Because this case does not involve any change in the Maryland law, a defendant's failure to demand an available grand jury transcript, and to preserve an objection to the trial court's failure to require its production, clearly implicates the waiver provisions of Curtis v. State, 284 Md. 132, 145-150, 395 A.2d 464 (1978).