522 A.2d 950

**Nelson MARTINEZ**

v.

**STATE of Maryland.**

**No. 68, Sept. Term, 1986.**

Court of Appeals of Maryland.

March 27, 1987.

**126**

Laurie I. Mikva, Asst. Public Defender (Alan H. Murrell, Public Defender on the brief), Baltimore, for appellant.

Jullyn K. Schulze, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ. and MARVIN H. SMITH, Associate Judge of The Court of Appeals of Maryland (retired), Specially Assigned.

COUCH, Judge.

Nelson Martinez, the appellant, appeals his conviction in the Circuit Court for Montgomery County for third degree sexual offense and false imprisonment. We shall reverse his conviction and order a new trial for the reasons set forth below.

## THE FACTS [1]

On August 21, 1984, the victim, a nine year old girl, was walking with her cousin, also age nine, in a park near the latter's home when they were approached by a man later identified as the appellant. According to the victim, the

---

[1]. The parties have filed an Agreed Statement of Facts, from which the following facts are taken. *See* Md.Rule 828 g.

appellant engaged them in conversation and put her on his knee. The victim testified further that appellant rubbed her shoulder, pulled down the strap of her shirt, did something that "felt like" a kiss on the back of her neck, and put his hand under her shorts. During this time, the victim tried unsuccessfully to escape.

Appellant was arrested and charged with third degree sexual offense, battery, and false imprisonment. Before the trial, the court ordered that a Spanish interpreter be provided for the appellant. On May 14, 1985, a hearing was held to determine if the appellant wished to waive his right to a jury trial. During the hearing, the following discussion took place (emphasis added):

THE COURT: Do you understand English?

MR. MARTINEZ: My understand a little bit.

THE COURT: I did not hear the last word.

MR. DALE [Counsel for the appellant]: A little bit, Your Honor.

THE COURT: And you do understand Spanish?

MR. MARTINEZ: Yes.

THE COURT: And you are being assisted by an interpreter?

MR. MARTINEZ: Yes.

THE COURT: Have you been using any narcotics or alcoholic drug within the past 48 hours?

MR. MARTINEZ: No.

THE COURT: Are you presently taking any form of medicine?

MR. MARTINEZ: Yes, I do. Psychology.

THE COURT: What kind of medicine are you taking?

MR. MARTINEZ: Lithium.

THE COURT: For what condition are you taking that medicine?

MR. MARTINEZ: Schizophrenia, paranoia, religion power—

THE COURT: All right. Are you presently suffering from any physical illness?

MR. MARTINEZ: No. Absolutely not.

THE COURT: Do you fully understand what we are dealing in here today?

MR. MARTINEZ: Yes, sir.

THE COURT: Do you understand you are entitled to be tried before a jury?

MR. MARTINEZ: Yes sir.

THE COURT: *Are you voluntarily waiving that right?*

MR. MARTINEZ: *I am a little bit nervous.*

THE COURT: Do you understand that if you wish to be tried before a jury, that a jury will consist of 12 people?

MR. MARTINEZ: Yes.

THE COURT: Do you know that all jurors called in here to serve are chosen by a computer, and their selection has nothing to do with their sex, race, religion, job, wealth or poverty?

MR. MARTINEZ: Okay. Yes, I understand it.

THE COURT: Do you know that if you elect to be tried before a jury, that you and your lawyer would be given a chance to have every juror questioned, to see whether or not the juror might have some prejudice against you?

MR. MARTINEZ: Okay. Yes.

THE COURT: Do you know that if you elected to be tried before a jury, that every person on that jury would have to find you guilty beyond a reasonable doubt before you could be convicted?

MR. MARTINEZ: Yes, I understand it.

THE COURT: Do you know that if you waive your right to a jury trial and elect to be tried before a Judge, that you could be convicted if the Judge alone finds you guilty beyond a reasonable doubt?

MR. MARTINEZ: Yes.

THE COURT: Do you understand that the decision to waive your right to a jury trial, is your decision to make and it cannot be made by your lawyer, the State's attorney, or me?

MR. MARTINEZ: Uh-huh. Yes.

THE COURT: *Has any person, either inside or outside of this courthouse, made you any promise, or has anyone threatened you in any way in order to have you give up your right to a jury trial?*

MR. MARTINEZ: *Yes.*

THE COURT: *You stated that you wished to waive your right to a jury trial. Are you certain and are you stating on the record of this Court that you have made that decision freely and voluntarily?*

MR. MARTINEZ: *Just the Judge.*

The court then concluded:

Please make a docket entry, I am satisfied after voir dire, that the defendant has freely, intelligently, and voluntarily waived his right to a trial by jury.

Later that day, the circuit court (Mitchell, J.) found the appellant guilty of third degree sexual offense and false imprisonment.[2] He was sentenced to concurrent five year terms of incarceration, with all but eighteen months suspended, and to a period of five years probation to commence upon release.

On appeal to the Court of Special Appeals, the appellant raised four issues, one of which was the following:

Did the appellant voluntarily waive his right to a jury trial?

In an unreported per curiam opinion (No. 1091, September Term, 1985, filed April 7, 1986), the intermediate appellate court ordered a limited remand to determine the voluntariness of the appellant's jury trial waiver.[3] The court stated:

"We shall remand for the trial court to hold a hearing limited to the issue of what appellant meant by his affirmative response to the one question concerning coercion of the waiver of jury trial. If on remand, the trial

---

2. The battery charge was merged with the sexual offense charge.

3. The court rejected the appellant's remaining contentions.

court finds that no coercion existed and therefore appellant voluntarily waived his right to a jury trial, the convictions shall stand and appellant may appeal that ruling. If the court finds that coercion did exist, and, as a result, appellant did not voluntarily waive his right to a jury trial, the convictions shall be reversed and the trial judge shall direct that appellant be granted a new trial."

On July 29, 1986, we granted the appellant's petition for writ of certiorari, and the State's cross-petition. The petitions raised the following questions for our consideration:

1. a. Is a limited remand a suitable procedure to determine whether a defendant has voluntarily waived his right to a jury trial?

   b. Does the existing record adequately demonstrate that appellant's waiver of a jury trial was voluntary?

2. a. Is a criminal defendant entitled, without showing particularized need, to inspect the grand jury testimony of a State's witness for purposes of cross-examination after the witness has testified for the State at a suppression hearing?

   b. Does a defendant waive a claim for production of grand jury testimony by failing to renew the motion prior to the time determined by the court to be the appropriate time for production?

   c. Was any error from the failure to produce grand jury testimony during the suppression hearing harmless beyond a reasonable doubt?

   d. Does *Jones v. State*, 297 Md. 7, 464 A.2d 977 (1983) apply to the production of a cassette tape of testimony when the tape was never transcribed in writing?

3. a. Does the right to the effective assistance of counsel require that defendants be afforded an opportunity to present closing argument before the court rules at a suppression hearing?

b. Did the appellant preserve any objection to the delayed opportunity for argument on the motion to suppress?

## WAIVER OF JURY TRIAL

### I

A defendant may waive his right to a jury trial,[4] and elect instead to be tried by the court.[5] Md.Rule 4–246, which authorizes the waiver of a jury trial, states in part:

"(a) *Generally.*—In the circuit court a defendant having a right to trial by jury shall be tried by a jury unless the right is waived pursuant to section (b) of this Rule. If the waiver is accepted by the court, the State may not elect a trial by jury.

(b) *Procedure for Acceptance of Waiver.*—A defendant may waive the right to a trial by jury at any time before the commencement of trial. The court may not accept the waiver until it determines, after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the

---

**4.** The Maryland Declaration of Rights preserves the right of an accused to a trial by jury. *See* Art. 5, 21, 24. The Sixth Amendment's guarantee of a jury trial is applicable to the States under the Fourteenth Amendment. *See Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968).

**5.** In *State v. Zimmerman,* 261 Md. 11, 19, 273 A.2d 156, 160 (1971), we said "any experienced lawyer worth his salt in the trial of criminal matters knows that there are many, many instances where trial before the court is in the best interest of the accused." One commentator has noted:

"The defendant may want to waive a jury trial when he feels that a jury panel composed of members of the community will be prejudiced against his case. This may be especially true when the defendant's alleged crime has received wide publicity or is particularly gruesome. The defendant may also feel that a judge would be less apt than a jury to draw negative conclusions from the defendant's appearance or manner of speech. Or, he may merely prefer that the arbiter of his fate be one person trained in the law rather than twelve laymen."

C. Whitebread, *Criminal Procedure* § 27.03, at 607 (1986).

defendant, or any combination thereof, that the waiver is made knowingly and voluntarily." [6]

Although we have had occasion to consider in some detail the effect of its predecessor,[7] *see, e.g., Countess v. State,* 286 Md. 444, 408 A.2d 1302 (1979); *Dortch v. State,* 290 Md. 229, 428 A.2d 1220 (1981); *State v. Ricketts,* 290 Md. 287, 429 A.2d 1025 (1981), this is our first encounter with Md. Rule 4–246. As the text of the Rule makes clear, an

---

**6.** Md.Rule 4–246 further provides:

"(c) *Withdrawal of a Waiver.*—After accepting a waiver of jury trial, the court may permit the defendant to withdraw the waiver only on motion made before trial and for good cause shown. In determining whether to allow a withdrawal of the waiver, the court may consider the extent, if any, to which trial would be delayed by the withdrawal."

**7.** Md.Rule 4–246 is patterned after Rule 735 [hereinafter Revised Rule 735], which was effective from January 1, 1982 to July 1, 1984. Revised Rule 735 stated in part:

a. *Generally.*

A defendant having a right to trial by jury shall be tried by a jury unless the defendant waives the right pursuant to section b of this Rule. If the waiver by the defendant is accepted by the court, the State may not elect that the defendant be tried by a jury.

b. *Procedure for Acceptance of Waiver.*

A defendant may waive the right to a trial by jury at any time before the commencement of trial. The court may not accept the waiver until it determines, after an examination of the defendant on the record in open court by the court, by the State's Attorney, by the attorney for the defendant, or by any combination thereof, that the defendant knowingly and voluntarily waived a jury trial.

Revised Rule 735 substantially changed its predecessor (also numbered 735; hereinafter Former Rule 735):

If the defendant elects to be tried by the court, the trial of the case on its merits before the court may not proceed until the court determines, after inquiry of the defendant on the record, that the defendant has made his election for a court trial with full knowledge of his right to a jury trial and that he has knowingly and voluntarily waived the right. If the court determines otherwise, it shall give the defendant another election pursuant to this Rule.

Former Rule 735(d). The codification of Revised Rule 735 eliminated the need for a written waiver, *see* Former Rule 735(b), and no longer required the trial court to recite to the accused a fixed litany concerning the precise contours of the jury trial right. For a discussion of this litany required of trial judges, see *Countess v. State,* 286 Md. 444, 455, 408 A.2d 1302, 1307–8 (1979); *State v. Ricketts,* 290 Md. 287, 429 A.2d 1025 (1981).

accused will be tried by a jury, unless he waives that right. Once he does so, the State may not elect a jury trial. "[T]he prosecution has no say as to the mode of trial; whether the accused is to be tried by court or jury is his prerogative." *Countess,* 286 Md. at 451, 408 A.2d at 1305.

The election to waive a jury trial may be made at any time before commencement of the trial. If the accused chooses such a course, a waiver inquiry must be conducted *on the record* in open court.[8] The questioner[9] must examine *the defendant,* for only he can waive his right to a jury trial. As we said in *Countess:*

> "[T]he responses must come from the defendant himself. The Rule does not envision that counsel simply repeat to the court that he has inquired of the defendant and given him the information necessary for an effective election."

*Id.* at 454, 408 A.2d at 1307.

■ For a waiver to be valid, the court must be satisfied that the defendant's election was made knowledgeably and voluntarily. In the words of the Supreme Court, the trial judge must be satisfied that there has been "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). *See Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970)

---

**8.** "The information given, the questions asked of the defendant and by the defendant and the answers and comments made must be on the record so as to be available for appellate review if the [waiver] is questioned."
*Countess,* 286 Md. at 454; 408 A.2d at 1307.

A colloquy with the defendant on the record serves several purposes. Besides satisfying the requirements of the Rule, such a discussion 1) conserves scarce judicial resources by creating a record capable of withstanding subsequent challenges to the waiver; 2) facilitates intelligent appellate review; and 3) emphasizes to the defendant the seriousness of his decision to waive a jury trial.

**9.** The questioner can be either the court, the State's Attorney, the attorney for the defendant, or any combination of these individuals. However, the trial court bears the ultimate responsibility for ensuring that the accused has tendered a valid waiver. The trial court's conclusion must be on the record.

("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.").[10]

■■■ In determining whether the defendant has knowingly and voluntarily waived his right to a jury trial, the questioner need not recite any fixed incantation. Whether there is an intelligent, competent waiver must depend on the unique facts and circumstances of each case. *Adams v. United States ex rel. McCann,* 317 U.S. 269, 278, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942). *See Dortch,* 290 Md. at 235, 428 A.2d at 1223 (1981); *Countess,* 286 Md. at 450, 408 A.2d at 1305. However, the court must be concerned that the waiver is not a product of duress or coercion. *See Adams,* 317 U.S. at 275, 280, 63 S.Ct. at 240, 242, 87 L.Ed. 268.[11] Furthermore, a defendant must have some knowledge of the jury trial right before he is allowed to waive it. *See Dortch,* 290 Md. at 232, 428 A.2d at 1222; *Harris v. State,* 295 Md. 329, 339 n. 1, 455 A.2d 979, 984 n. 1 (1983); *Adams,* 317 U.S. at 280, 63 S.Ct. at 242, 87 L.Ed. 268.[12]

## II

■■■ In the instant case, the appellant argues that his waiver was not voluntary.[13] Based on a review of the facts and circumstances in this case, we conclude that the tran-

---

**10.** If the court determines the waiver is an intentional relinquishment or abandonment of a known right, it meets the test of Md.Rule 4–246.

**11.** The trial judge need not follow a "specific ritual or fixed litany" in determining the voluntariness of the defendant's election to waive his jury right. *See Dortch,* 290 Md. at 235, 428 A.2d at 1223–24. "We nevertheless take note of the fact that many trial judges do direct such an inquiry to defendants who waive jury trials ... and we think this is the preferable practice." *Id.* at 236, 428 A.2d at 1224.

**12.** We note that the trial judge's recitation in the instant case adequately apprised the appellant of his jury trial right, such that he was able to make a knowledgeable waiver. *See infra* note 13.

**13.** Both parties agree the appellant's waiver was knowledgeable.

script of the waiver hearing simply does not support the trial court's conclusion that the appellant voluntarily waived his right to a jury trial. The following colloquy is particularly relevant:

"THE COURT: Has any person, either inside or outside of this courthouse, made you any promise, or has anyone threatened you in any way in order to have you give up your right to a jury trial?

MR. MARTINEZ: Yes."

Apparently, the Court of Special Appeals reached a similar conclusion: "Upon reviewing the record, we are not satisfied that the waiver was voluntary." As to the portion quoted above, the court stated: "Appellant replied 'yes' when asked whether someone had coerced him into waiving the jury trial. While this response could perhaps be explained by the language problem, we cannot conclude that the waiver was made voluntarily." Nevertheless, a limited remand was ordered so that the appellant's responses could be clarified. This action was improper.

Rule 4–246 requires that the defendant's waiver be on the record *before* the trial commences. *See United States v. Saadya,* 750 F.2d 1419, 1422 (9th Cir.1985). In *Saadya,* the United States Court of Appeals for the Ninth Circuit concluded that "the absence of a waiver on the record of the right to trial by jury cannot be remedied by subsequent proceedings on remand." *Id.* In a footnote, the court elaborated:

"In [*United States v.*] *Reyes,* [603 F.2d 69 (9th Cir. 1979) ] we said that a post-trial waiver was not sufficiently reliable and might be based on 'subtle coercion [that] is difficult to detect in the appellate record.' 603 F.2d at 72. We also said that it was necessary for the waiver to occur on the record at the time the right was surrendered for two related reasons: one, so that the defendant would understand that his waiver was 'an important step in the trial,' *id.* at 71, and, two, so that the judge might question the defendant and evaluate his responses at the time the decision was made. *Id.* at 72."

*Id.* at 1422 n. 2. *See United States v. David*, 511 F.2d 355, 362 (D.C.Cir.1975) (noting "the inherent ambiguities and difficulties in retrospectively determining the validity" of a waiver of the right to a jury trial).

The State argues: "If courts are not required to ask whether jury trial waivers are the result of threats, promises or inducements, then an affirmative response to this question cannot, alone, invalidate an otherwise voluntary waiver." The State's argument is disingenuous. In its best light, the State wishes for us to blind our eyes to the appellant's clear affirmative response quoted above. It is one thing to say that a trial court need not recite a specific litany relating to the voluntariness of an election. But it is quite another thing to say that, if the court decides to ask such a question, it is free to ignore the answer.

■ If the record does not disclose a knowledgeable and voluntary waiver of a jury trial, a new trial is required. *See Countess*, 286 Md. at 462–63, 408 A.2d at 1311; *Noble v. State*, 293 Md. 549, 558, 446 A.2d 844, 848 (1982). *See also Saadya*, 750 F.2d at 1421–22; *Jackson v. United States*, 498 A.2d 185, 189–90 (D.C.1985). Accordingly, the appellant is entitled to a new trial.

## ACCESS TO GRAND JURY TESTIMONY AT A SUPPRESSION HEARING

### I

We next address appellant's contention that he was improperly denied access to the grand jury testimony of a prosecution witness at the suppression hearing.

On May 14, 1985, a pre-trial hearing was held to determine the validity of the appellant's motion to suppress his confession and in-court identification evidence. Before the State called its initial witness, Detective Catherine Stavely,[14] on the first feature of the motion (the confession), appellant

---

**14.** Detective Stavely read appellant his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1964).

requested production of the grand jury minutes, which included the Detective's testimony. The following colloquy occurred:

MR. DALE [Counsel for the appellant]: Anyway, we have moved for production of the Grand Jury minutes under the Jones decision. It is my understanding that they have no objection to producing those. They are available as a tape cassette, which is a for [sic] that is agreeable to the defendants.

I suppose the only question is when they want it to be produced to the defendants. It would be our position that they are producible immediately upon the Court's granting of the motion, and there is nothing that I have read in Jones or any other decision that indicates that they are not producible at that time.

I think the State's attorney basically has a policy that they should not be produced until the testifying witness has testified on direct; but I see nothing in the law that mandates that.

In addition, it would be our position that, and our understanding that the detective will testify in the Motion to Suppress.

Since the Motion to Suppress is basically a bringing forward of a part of the trial, it would be our position that we would be entitled to listen to the tape at this point on the assumption that Your Honor will order that the Grand Jury minutes be produced.

THE COURT: All right. Ms. Toolan.

MS. TOOLAN [State's Attorney]: Your Honor, firstly, certainly if Your Honor orders it, we have no problem with producing a transcript, a cassette recording of those Grand Jury minutes.

Defense does have full discovery. He does know who testified. The children did not testify, it was merely the detective.

Your Honor, according to the Maryland case law, as I have been able to find it, the defendant must show a

particularlized need for that discovery. I do not think the defense has made that showing.

Your Honor, there is a subsequent case to Jones and that is Myers, and according to Myers, it says, "Myers advised that the trial Judge violated the rule in establishing Jones, and when he did, he failed to grant Myers pretrial motion to inspect for potential cross-examination purposes the Grand Jury testimony."

It also indicates that Jones did not stand for that proposition. The Court's indulgence for one moment. Myers' motion to inspect the Grand Jury testimony was made prior to the trial and was grounded on the theory of potential impeachment of a witness, always amounts to a showing of particularized need. Jones does not stand for that proposition.

Again, Your Honor, if Your Honor was to order such a transcript, the State's position is that it is not available to the defense until after Detective Stavely has testified.

THE COURT: All right. Anything further.

MR. DALE: Nothing further, Your Honor.

THE COURT: I think the State properly stated the law, as I understand it. Therefore, we will hold under advisement your motion.

The hearing on the motion to suppress commenced with the testimony of Detective Stavely. During the defense's cross-examination of this witness, the issue of the grand jury testimony recurred in the following manner:

MR. DALE: Detective Stavely, did you testify before the Grand Jury concerning this case?

MS. TOOLAN: Objection, Your Honor.

THE COURT: I will permit it. You may answer yes or no.

THE WITNESS: Yes, I did.

MR. DALE: Did you testify before the Grand Jury regarding any events surrounding the arrest of Mr. Martinez?

MS. TOOLAN: Objection, Your Honor. I believe—

MR. DALE: Your Honor, I am trying to make my particularized need in view of the Court's prior ruling on the Grand Jury minutes.

MS. TOOLAN: Your Honor, any answer from the detective is going to be a revelation of her Grand Jury testimony.

THE COURT: I will agree with that. Sustained.

Subsequently, the motion to suppress appellant's confession was denied. Detective Stavely also testified for the State on the second feature of the motion to suppress (in-court identification evidence). At no time during her testimony on this issue did appellant's counsel request access to the grand jury testimony. The motion to suppress the in-court identification evidence was denied.

Shortly thereafter, the trial began and continued into the following day. Detective Stavely was the State's last witness. At the conclusion of her direct testimony, appellant's counsel requested and finally obtained permission to listen to the tape of her grand jury testimony:

THE COURT: You may cross-examine, sir.

MR. DALE: Thank you, sir. At this time I would renew my request for the Grand Jury minutes.

THE COURT: On what basis, sir?

MR. DALE: That, as it is my understanding, the detective testified before the Grand Jury, and I could not effectively cross-examine her without knowing what prior statements she may have made. I realize there is some language about particularized need.

THE COURT: Yes.

MR. DALE: But I think you go around in a circle if you do not know what she testified to.

THE COURT: Do you have some reason to believe that she committed perjury before the Grand Jury?

MR. DALE: Grand Jury proceedings are closed to the defense, Your Honor. I have no specific reason, but I believe certainly the thrust of the case law is such that we should be allowed to inspect them.

There is simply no way of knowing what is in them, and without knowing what is in them, it is very hard to say that there is a point at any particular thing; but I think in the interest of effective cross-examination, I should be allowed to inspect them.

THE COURT: Ms. Toolan?

MS. TOOLAN: Again, Your Honor, briefly, I believe the defense does have to show that there is a particularized need for them. If Your Honor feels that there is, again, it is a little late at this point to prepare a transcript, but we can obtain a cassette of them.

State has no objection certainly to him listening to Detective Stavely's testimony.

THE COURT: All right.

MS. TOOLAN: However, I do not believe the defense has made out a particularized need.

After a brief recess, during which appellant's counsel listened to the tape of the grand jury testimony, the trial proceeded.

In *Jones v. State,* 297 Md. 7, 15, 464 A.2d 977, 981 (1983), we held that after a State's witness had testified on direct examination, an accused was entitled to inspect that witness's grand jury testimony for use in cross-examination without any requirement that he show any other need.[15]  In reaching this conclusion, we refused to require a greater showing of particularized need because, "until a witness's grand jury testimony is disclosed, there is no way a defendant can determine whether such testimony varied from the trial testimony so as to be of any use on cross-examination." *Id.* at 13, 464 A.2d at 980.  Our holding was not a departure from the law as it then existed; it merely explained the "particularized need" requirement as enunciated in *Attorney Grievance Commission v. Strathen,* 287 Md. 111, 117, 411 A.2d 102, 105–6 (1980).

---

**15.** Stated differently, where a witness before the grand jury has testified at trial for the State, a particularized need for disclosure exists for purposes of testing the witness's credibility.

The appellant argues here that the reasoning of *Jones* applies with equal force to a suppression hearing, such that he was entitled to inspect Detective Stavely's grand jury testimony after she had testified on direct examination at that hearing. For the reasons to follow, we agree with the appellant and conclude that the trial court erred in refusing to permit inspection of the grand jury testimony at the suppression hearing.

## II

As a preliminary matter, we address the State's contention, and the Court of Special Appeals's conclusion, that appellant waived his right to complain that he did not receive the grand jury testimony. Although the appellant's counsel raised the issue at the suppression hearing before any witnesses were called, the State argues he failed to renew that request at the appropriate time—following Detective Stavely's direct testimony. It was not until the trial itself, after the Detective's direct testimony, that appellant's counsel again requested and was appropriately granted access to the grand jury minutes.

█ Certainly, an accused can waive his right to inspect grand jury testimony. In *Jones*, 297 Md. at 25 n. 1, 464 A.2d at 985 n. 1 (Per Curiam opinion on Motion for Reconsideration), we said that "a defendant's failure to demand an available grand jury transcript, and to preserve an objection to the trial court's failure to require its production, clearly implicates the waiver provisions of *Curtis v. State*, 284 Md. 132, 145–150, 395 A.2d 464 (1978)." Furthermore, a waiver will occur when a defendant fails to renew a pretrial motion for production after the State's witness has testified in chief. *See State v. Calhoun*, 306 Md. 692, 704–6, 511 A.2d 461, 467–68 (1986). *Accord, Myers v. State*, 58 Md.App. 211, 220–22, 472 A.2d 1027, 1032–33, *cert. denied*, 300 Md. 484, 479 A.2d 373 (1984). However, we conclude under the facts and circumstances of this case that appellant properly renewed his motion for production of the grand jury testimony.

■ As noted earlier, the trial court held "under advisement" the appellant's initial request at the suppression hearing for production of the grand jury testimony. The appellant's counsel apparently believed, perhaps mistakenly,[16] that the trial court required the appellant not only to renew his motion after Stavely's direct testimony, but to make an additional showing of "particularized need." Thus, when defense counsel attempted to make a showing of "particularized need" during cross-examination of the Detective, coupled with questions concerning her testimony before the grand jury, we believe he was renewing his motion for production of that testimony. When the trial court sustained the State's objection to the appellant's questions, the court was finally ruling in the negative on the motion to order production of the grand jury testimony.

## III

■ Having concluded that appellant renewed his motion for inspection of the grand jury testimony at the appropriate time (i.e., after Detective Stavely's direct testimony), we next address whether our decision in *Jones* is applicable in the context of a suppression hearing. We agree with the appellant that it is.

According to *Jones*, a "particularized need" exists for disclosure of grand jury testimony where a defendant wishes to cross-examine a State's witness after he has testified on direct. Quoting from the Supreme Court's opinion in *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 986–87, 2 L.Ed.2d 1077 (1958), we said that the use of the grand jury transcript at the trial to

---

**16.** The State argues before us that neither the trial court nor the prosecutor did anything to warrant the assumption that appellant must show some "particularized need" beyond the mere fact of Stavely's testimony. But the State's contention is undermined by the prosecutor's assertion at the trial, following the Detective's direct testimony and the appellant's request for inspection of the grand jury minutes, that the defense still had not "made out a particularized need." However, we need not resolve this question.

impeach a witness, to refresh his recollection, to test his credibility and the like are cases of "particularized need" where the secrecy of the proceedings is lifted discretely and limitedly. *Jones,* 297 Md. at 13, 464 A.2d at 980. Under such circumstances, the need for disclosure outweighs the important goal of preserving the secrecy of grand jury proceedings. That need for disclosure is no less compelling in the context of a suppression hearing.

A suppression hearing is a critical part of the criminal adjudicatory process. The Supreme Court has noted, with good reason, that "suppression hearings often are as important as the trial itself." *Waller v. Georgia,* 467 U.S. 39, 46–7, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984) (citations omitted). For example, the State's case may turn upon the defendant's confession or other evidence he seeks to suppress, and the trial court's ruling on such matters may be dispositive of the outcome of the case. Thus, if the defendant prevails at the hearing, the State's case could be seriously crippled, possibly prompting a dismissal of charges or some other disposition favorable to the defendant. On the other hand, if the State is successful, the suppression hearing may be the *only* proceeding, because the defendant thereafter pleads guilty pursuant to a plea bargain. *See id.* at 47, 104 S.Ct. at 2215.

Moreover, a suppression hearing resembles a full trial in many respects. Witnesses are sworn and provide testimony, and opposing counsel present arguments. Significantly, the outcome of the hearing will frequently turn on the trier of fact's evaluation of the evidence and the credibility of the witnesses. *See id.* (citation omitted) ("The outcome frequently depends on a resolution of factual matters."). As such, access to grand jury testimony for use during cross-examination to impeach a witness, to refresh his memory, or to test his credibility will significantly aid the defense at a crucial stage in the case. Beyond the benefit to the defendant, the availability of such testimony will enhance the accuracy of the factual determinations made at the

suppression hearing.[17]  *See Douglas Oil Co. of California v. Petrol Stops Northwest,* 441 U.S. 211, 222 n. 12, 99 S.Ct. 1667, 1674 n. 12, 60 L.Ed.2d 156 (1979) ("Such use is necessary to avoid misleading the trier of fact."). In light of such importance, and the crucial nature of a suppression hearing, we refuse to require an additional showing beyond what is now necessary for a defendant to gain access to a witness's grand jury testimony at the trial itself. Accordingly, we conclude that after a State's witness has testified on direct examination at a suppression hearing, a defendant is entitled to inspect the grand jury testimony of that witness for cross-examination purposes without any requirement that he show any other need.

The State argues that the need for grand jury testimony at a suppression hearing is reduced because a motion to suppress a confession can be relitigated at trial when such testimony will be fully available to the defendant for purposes of cross-examination. *See Hillard v. State,* 286 Md. 145, 151, 406 A.2d 415, 419 (1979). We reject this contention. It is well settled that a defendant in a criminal case has a constitutional right to have a "fair hearing and a reliable determination" that his confession was given voluntarily, a determination uninfluenced by the truth or falsity of the confession. *See Jackson v. Denno,* 378 U.S. 368, 376–77, 84 S.Ct. 1774, 1780–81, 12 L.Ed.2d 908 (1964); *Lodowski v. State,* 307 Md. 233, 251, 513 A.2d 299, 309 (1986).[18] This is essential because a defendant in a criminal case "is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession...." *Jackson,* 378 U.S. at 376, 84 S.Ct. at 1780

---

17. This is especially important in a suppression hearing, where allegations of misconduct by police and prosecution are frequently raised.

18. This determination must "appear from the record with unmistakable clarity." *State v. Kidd,* 281 Md. 32, 37, 375 A.2d 1105, 1109, *cert. denied,* 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977) (quoting *Sims v. Georgia,* 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967)).

(citation omitted); *Lodowski,* 307 Md. at 251, 513 A.2d at 309. In this State, two steps are involved in the voluntariness determination. As we explained in *State v. Kidd,* 281 Md. 32, 37, 375 A.2d 1105, 1109, *cert. denied,* 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977) (citations omitted), "[t]he trier of fact passes on traditional voluntariness only after the judge, upon a hearing, out of the presence of the jury, has fully and independently resolved the issues against the accused." [19] The trial judge's initial determination, which is wholly separate from the ultimate presentation of the issue to the jury, addresses the confession's initial admissibility. If the trial judge determines that the confession is not voluntary, the confession is not admitted into evidence and the trier of fact never considers it. *Dempsey v. State,* 277 Md. 134, 143, 355 A.2d 455, 460 (1976). However, if the trial judge concludes the confession is voluntary, it is received in evidence and its admission becomes prima facie proof that the statement is freely and voluntarily given. *Id.* at 144, 355 A.2d at 460 (quoting *Gill v. State,* 265 Md. 350, 289 A.2d 575 (1972)). Thus, the defendant has a constitutionally protected interest in having the trial judge's admissibility determination done correctly in the first instance, and that interest is not protected by the possibility that the trier of fact at some later point may have an opportunity to determine the voluntariness of the confession.

## IV

■ The State's final contention need not detain us long. We do not see any compelling reason to limit the application

---

**19.** "The federal constitutional test with respect to the judge's preliminary decision is that of a preponderance of the evidence, *Lego v. Twomey,* 404 U.S. 477 [92 S.Ct. 619, 30 L.Ed.2d 618] (1972), and the test with respect to a final determination by the trier of fact is beyond a reasonable doubt, *Linkins v. State,* 202 Md. 212, 223, 96 A.2d 246 (1953)." *Kidd,* 281 Md. at 38, 375 A.2d at 1109. *See Lodowski,* 307 Md. at 251, 513 A.2d at 309.

of *Jones* to a written transcript of grand jury testimony. Of course, under Md.Code (1984 Repl.Vol., 1986 Cum.Supp.), Courts and Judicial Proceedings Article, § 2–503, the trial court has "the discretionary power to order grand jury testimony to be recorded and transcribed at the request of the defendant as well as the State." *Jones*, 297 Md. at 22, 484 A.2d at 984. However, where there is an appropriate alternative such as a tape recording of the grand jury testimony, this will suffice for the purposes of *Jones*. To require otherwise would exalt form over substance.[20] *See State v. Wood*, 67 Or.App. 218, 226 n. 3, 678 P.2d 1238, 1243 n. 3, *rev. denied*, 297 Or. 124, 681 P.2d 134 (1984) ("We see no distinction between tape recordings and transcripts of those recordings.").[21]

Accordingly, the appellant is entitled to a new suppression hearing.

JUDGMENT OF COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND TO REMAND TO THAT COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY MONTGOMERY COUNTY.

---

**20.** We note that neither party opposed production of the grand jury testimony in the form of a tape cassette.

**21.** In light of our disposition in this case, we need not address the State's contention that any error in the failure to require production of the grand jury testimony at the suppression hearing was harmless beyond a reasonable doubt. Nor do we address the appellant's remaining contentions for reversing the judgment of the intermediate appellate court.