557 A.2d 235

In re CRIMINAL INVESTIGATION NO. 437 IN the CIRCUIT COURT FOR BALTIMORE CITY.

No. 82, Sept. Term, 1988.

Court of Appeals of Maryland.

May 5, 1989.

**68**

Ronald B. Rubin and M. Albert Figinski, Melnicove, Kaufman, Weiner & Smouse, P.A., Steven A. Allen, Davis, Weikel & Allen, Baltimore, all on brief, for petitioner.

Carolyn J. McElroy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

D. McCarty Thornton, Elizabeth L. Weiss on brief of The Office of the Inspector General of the U.S. Dept. of Health and Human Services, amicus curiae, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

CHARLES E. ORTH, Judge, Specially Assigned.

The question on this appeal is whether the Circuit Court for Baltimore City erred in ordering disclosure to the federal government for use in a civil proceeding against a private corporation of materials obtained from the corporation by the Grand Jury of Maryland in the course of a criminal investigation. We hold that the court did not err.

## STATEMENT OF THE CASE

About the middle of June 1986, the Attorney General of Maryland, in compliance with gubernatorial mandates, *see In Re Special Investigation No. 185*, 293 Md. 652, 654, 446 A.2d 1151 (1982), brought the attention of the Grand Jury of Maryland, convened in Baltimore City, to a private corporation acting as a pharmaceutical Medicaid provider (the

pharmacy).[1] Documents, including records of prescriptions filled at two of the pharmacy's stores, were obtained through subpoenas duces tecum issued by the Grand Jury. The documents concerned the pharmacy and a licensed pharmacist employed by the pharmacy (the employee) in the activities of the pharmacy as a Medicaid provider.[2] In May 1988, the investigation was discontinued. No indictments were returned. The Grand Jury disbanded. The pharmacy had reported that certain subpoenaed documents which the State permitted it to retain temporarily had been destroyed. Nevertheless, the State felt that any monies that may have been overpaid by Medicaid should be recovered. So it

1. Maryland Rule 8–123(c) provides that on appeals from criminal investigations

 [t]he name of the person under investigation shall not be used in any opinion, oral argument, brief, record extract, petition, or other document pertaining to the appeal that is generally available to the public.

 We granted petitioners' motion to seal the record extract with access to it limited to personnel in the Clerk's Office and the Judges of the Court and their staff. Md. Rule 8–123(e).

2. The Medicaid Program around the nation is funded by joint state and federal efforts, and all sanctions and monetary recoveries with respect to improper payments under state or federal laws are shared proportionately by the various governmental units. Thus, this appeal involves a variety of Maryland and federal officials, agencies, departments, and laws. As to the State, for example, in addition to the Maryland Medical Assistance Program, there is the Attorney General and the Medicaid Fraud Control Unit under him; the Department of Health and Mental Hygiene, and the Medical Care Compliance Unit, and Policy, Finance and Regulation Unit under that Department. As to the federal government, there is the Department of Justice; the Department of Health and Human Services; and the Civil Monetary Penalties Law, 42 U.S.C. § 1320a–7a (1988).

 Reference herein to a particular State or federal entity would usually serve no good purpose and simply clutter the opinion. So, unless otherwise indicated, "State" includes the Maryland entity appropriate to the discussion and "federal government" includes the United States entity appropriate to the discussion. This approach is taken, not only in the interest of brevity, by making it unnecessary to spell out the full name of a particular entity each time to no good purpose, but also to avoid the confusion caused by referring to an entity by certain of the initial letters of its compound parts, such as CMPL, DHHS, DHMH, MCCA, MFCU, etc., etc.

turned to State civil procedures. In the middle of June 1988, the State filed a motion in the Circuit Court for Baltimore City seeking authority to disclose to named State agencies all documents obtained by the Baltimore City Grand Jury and the State from the pharmacy "for the sole purpose of pursuing any State civil and administrative proceedings to recover any amounts previously overpaid to [the pharmacy]." The pharmacy "agreed and consented to" the disclosure but with a proviso. It declared:

> By consenting to this disclosure, [it] does not waive its rights to object to further disclosure to other persons or agencies.

The employee was not a party to the consent. The court granted the motion and issued an order in accord therewith on 14 June 1988.

Then the State decided to request the federal government to pursue civil remedies. On 23 June 1988, the State filed another motion in the Circuit Court for Baltimore City seeking disclosure of certain Grand Jury materials, this time to the federal government so it could seek civil sanctions.

Upon a hearing, the court granted the State's motion by order dated 20 July 1988. On 22 July 1988, the State filed a "Motion for Appropriate Relief (Motion to Supplement Record)." The State sought permission to have a letter of transmittal accompany the documents ordered to be disclosed. The court granted the motion on the date it was filed.

The pharmacy and the employee noted a timely appeal to the Court of Special Appeals "from the Orders of the Circuit Court for Baltimore City entered in this action on July 20, 1988 and July 22, 1988, authorizing the disclosure of grand jury materials." We granted appellants' petition for the issuance of a writ of certiorari before decision by the intermediate appellate court.

## THE GRAND JURY

*The Common Law*

The grand jury is of ancient English vintage. It stemmed from the "Grand Assize" established by Henry II, primarily as a weapon for the King's use in enforcing the King's peace. Gilbert, *The Grand Jury—An Indictment*, The Law Forum 4 (fall, 1987). An accusation by the Grand Assize was followed by trial by ordeal in the form of cold water or hot water or hot iron or abominable morsel. *Id.* The ordeal was of such nature that conviction usually followed an accusation. Although the barbarous trial by ordeal was abolished in 1215, the accuser and the trier of the facts, unlike today, were the same body. *In re Report of Grand Jury*, 152 Md. 616, 619, 137 A. 370 (1927). Gradually, however, the grand jury concept evolved to be that as we now know it. In the forty-second year of Edward III, at a commission of oyer and terminer, "the sheriff of the county was required ... to return a panel of knights, which the old records designate as 'Le Graunde Inquest.'" *Id.* at 620, 137 A. 370. "From that early time on to the present," we observed in *In re Report of Grand Jury*, 152 Md. at 621, 137 A. 370, and quoted in *In Re Special Investigation No. 236*, 295 Md. 573, 577–578, 458 A.2d 75 (1983),

> the grand jury has been continued and preserved as an institution necessary for the preservation of the peace, good order, and dignity of the state in bringing to trial those guilty of violations of law, and in protecting people from being put on trial upon frivolous, unfounded, or false accusations.[3]

So, at the common law,

> just as no man may be convicted and punished of a felony without the unanimous verdict of twelve of his peers,

---

**3.** For a contrary view, see Gilbert, *The Grand Jury—An Indictment*, The Law Forum 4 (fall, 1987).

constituting a petit jury, neither can he be put to his trial for any such offense except upon the presentment or indictment by at least twelve of his fellow citizens, constituting the grand jury.[4]

*In re Report of Grand Jury,* 152 Md. at 621, 137 A. 370. Given that the two great purposes of the grand jury are to bring to trial those who are properly charged with crime, and to protect the citizen against unfounded accusations of crime, it is clear that

[t]he grand jury is an accusing body, and not a judicial tribunal, and it acts upon knowledge possessed by its members from any source, whether from witnesses brought before it, or from information gained before its sessions.

*Coblentz v. State,* 164 Md. 558, 566, 166 A. 45 (1933). We said in *Blaney v. State,* 74 Md. 153, 156, 21 A. 547 (1891):

[I]n this State they have plenary inquisitorial powers, and may lawfully themselves, and upon their own motion, originate charges against offenders though no prelimi-

---

We noted in *Brack v. Wells,* 184 Md. 86, 40 A.2d 319 (1944): "In England [the grand jury] has been recently abolished." *Id.* at 95, 40 A.2d 319 (Opinion Denying Modification).

4. The function of the grand jury is accomplished by indictments or presentments.... Practically, they are employed for the same purpose, that of informing the accused of the charges against him and affording him an opportunity to make defense. *In re Report of Grand Jury,* 152 Md. 616, 622, 137 A. 370 (1927).

Technically, an indictment is a formal written accusation made by the public prosecutor, and submitted to the grand jury, in order that they may determine from competent evidence whether the accusation, if proven, would be sufficient to bring about the conviction of the accused. The grand jury, finding this to be true, endorses upon the indictment, "A True Bill," attested by its foreman. Presentments are accusations of crime made by the grand jury from their own knowledge or from evidence furnished them by witnesses or one or more of their members. In a presentment the grand jury charges that a specific person has been guilty of specific acts which constitute a violation of the criminal law; and from this presentment the prosecuting attorney prepares an indictment and returns it to the grand jury for the endorsement of "A True Bill."

*Id.* at 622–623, 137 A. 370.

nary proceedings have been had before a magistrate, and though neither the court nor the State's Attorney has laid the matter before them.

In the exercise of the broad inquisitorial power enjoyed by the grand jury, however, it is confined to an investigation of violations of the criminal law. *In re Report of Grand Jury,* 152 Md. at 622, 137 A. 370. In *In Re Special Investigation No. 236,* 295 Md. at 583, 458 A.2d 75, we declared: "The conclusion is inescapable that at common law the grand jury was concerned with matters criminal." [5]

"[U]nless such investigations [of matters criminal] disclose facts which would constitute a recognized violation of the criminal law, [the grand jury] have no power or authority to criticize any particular individual or number of individuals.

*In Re Report of Grand Jury,* 152 Md. at 623, 137 A. 370. In other words:

If the evidence obtained through their investigations warrants a presentment or indictment, under the law and the oath which they are required to take, they are bound to present or indict, and if in their judgment it falls short of showing the commission of a criminal offense, they are bound to refrain from making public the results of their investigation.

*Id.*

### The Grand Jury Under the Federal Government

As we have seen, an integral part of the common law was the right of a person in a criminal cause to have his fate placed in the hands of his country, that is, in a jury of his

---

5. We noted in *In Re Special Investigation No. 236,* 295 Md. 573, 579, 458 A.2d 75 (1983), that

grand juries are directed by statute in this and some other states to inspect State correctional facilities and county jails. It is also noted that it has been customary for grand juries to present other reports....

We emphasized, however, that these special duties and customs have in no way "undermined or eroded the essential functions of the grand jury." *Id.*

peers. The jury concept encompassed not only the determination of a person's guilt or innocence of a crime charged, but also whether he should be charged with a crime in the first place. Whether to charge was the function of a "grand" jury. The determination of guilt or innocence of a crime charged was the function of a "petit" jury.

When the British colonies were established in America, the common law of England followed. The time came when the colonists found it necessary to throw off the English yoke and obtain relief from the suppression of their "unalienable Rights." They won their independence on the field of battle and proclaimed it by a Declaration of Independence. Then,

> in Order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defence, promote the general Welfare and secure the Blessings of Liberty to ourselves and our Posterity

they ordained and established a Constitution for the United States of America. The Constitution became effective on 4 March 1789, the day fixed for the commencement of the operations of the government, by virtue of its ratification by the conventions of eleven states, of which Maryland was one. On 25 September 1789, Congress proposed ten amendments which were declared ratified on 15 December 1791. The amendments became known as the Bill of Rights because they went to ensure and preserve those "unalienable rights" so arduously won in the fight for independence.

One of the rights guaranteed by the Bill of Rights was the entitlement of an accused to a jury. The Fifth Amendment concerned the grand jury:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury....[6]

---

6. The Sixth Amendment of the Constitution concerned the petit jury:
> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed....

*The Grand Jury in the State of Maryland*

In Maryland, there is no constitutional right of a person accused of a crime to be indicted by a grand jury. The federal constitutional provision is not applicable to the states, *see Hurtado v. California*, 110 U.S. 516, 535, 4 S.Ct. 111, 120, 28 L.Ed. 232 (1884); the Maryland Constitution does not bestow the right, and common law rights may be changed by legislative enactment, judicial opinion, and rules of court. *Lutz v. State*, 167 Md. 12, 15, 172 A. 354 (1934). It once was that in Maryland the right to indictment by a grand jury was given by legislative enactment implemented by the Maryland Rules, but subsequent legislation and rule amendments abrogated the right, although retaining a grand jury indictment as one means of charging an accused of certain crimes. The law as it was and the legislative history of the partial demise of the right to indictment by a grand jury are traced in *Mooney v. State*, 28 Md.App. 408, 346 A.2d 466 (1975).

Although there is no Maryland constitutional right to indictment by a grand jury, the organic law of this State recognizes the grand jury concept in our system of criminal justice. "We, the People of the State of Maryland" declared in Article 5 of the Declaration of Rights

That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law....

And "we" declared in Article 21 of the Declaration of Rights

That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence; ... and to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty.

Although the grand jury is not expressly named, its recognition is implicit in Article 5 by the entitlement to the common law of England, and in Article 21 inasmuch as the

primary purposes of an indictment returned by a grand jury is to fulfill the constitutional requirements contained in that article. *State v. Morton,* 295 Md. 487, 490, 456 A.2d 909 (1983); *Ayre v. State,* 291 Md. 155, 163, 433 A.2d 1150 (1981).

Despite the absence of a constitutional right, it is manifest that the grand jury still plays an important role in the administration of criminal justice in this State. A grand jury is convened in every county and in Baltimore City. The Maryland Code is replete with provisions concerning the grand jury and grand jurors. The declared policy of this State is that every citizen who maintains his name on the roll of voters registered for State elections shall have the opportunity to serve on grand juries and the obligation to serve when summoned. Maryland Code (1973, 1984 Repl.Vol.), § 8–102(b) of the Courts and Judicial Proceedings Article. Under the Maryland Rules, a "charging document" includes an indictment, Rule 4–102(a), and an "indictment" means "a charging document returned by a grand jury and filed in a circuit court," Rule 4–102(d). More often than not, when charges against an accused originate in the circuit court, they emanate from the grand jury.

## SECRECY AND THE GRAND JURY

Secrecy is the lifeblood of the grand jury. The Supreme Court said in *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218–219, 99 S.Ct. 1667, 1672–1673, 60 L.Ed.2d 156 (1979) (footnotes and citation omitted):

We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings. In particular, we have noted several distinct interests served by safe guarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witness-

es who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

"Grand jury secrecy, then," the Court pointed out in *United States v. Sells Engineering Inc.*, 463 U.S. 418, 424–425, 103 S.Ct. 3133, 3138–3139, 77 L.Ed.2d 743 (1983), quoting *United States v. Johnson*, 319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546 (1943), "is 'as important for the protection of the innocent as for the pursuit of the guilty.' " This Court stated in *Coblentz v. State*, 164 Md. at 566–567, 166 A. 45, that it

is an inflexible requirement that [the grand jury's] investigations shall be carried on secretly and free from outside interference or influence; and great care is taken that they shall be so carried on.

In response to a Motion for Reconsideration in *Jones v. State*, 297 Md. 7, 23, 464 A.2d 977 (1983) (citations omitted), we made clear that

[t]he rule of secrecy surrounding grand jury proceedings is a product of the common law and "is designed to protect the jury from outside interference or pressure[.]"

We noted that the secrecy rule is not designed for the protection of witnesses, but for that of grand jurors and in furtherance of public justice. *Id.* And, we added, nor does the witness have a privilege of having his testimony treated as a confidential communication. *Id.*

The Court in *Coblentz* explained that "[t]he purposes of [the secrecy rule] are many." 164 Md. at 567, 166 A. 45.

Freedom of inquiry is to be preserved, and at the same time individuals whose conduct may be investigated, but against whom no indictment may be found, are to be

protected from disrepute, and all individuals are to be protected from one-sided presentations of unfavorable evidence, without opportunity to reply, before any one present unnecessarily.

*Id.* There is a statutory prescription. that

[a]ll persons who have been selected for grand jury service in the circuit court of any county in the State shall take an oath of secrecy.

Md.Code (1973, 1984 Repl.Vol.), § 8–213(a) of the Courts and Judicial Proceedings Article. And the legislature has declared:

A grand juror, except when lawfully required by a court, may not willfully disclose (1) any evidence adduced before the grand jury, or (2) anything which he himself or any member of the grand jury said, or in what manner he or any other grand juror voted, regarding any matter before the grand jury.

*Id.* § 8–213(b). A stenographer appointed "to take and transcribe the testimony given before the grand jury for the exclusive use and benefit of the grand jury and the State's Attorney for the county, unless otherwise ordered by the court," *id.* § 2–503(a), "shall take and subscribe an oath that he will keep secret all matters and things occurring before the grand jury," *id.* § 2–503(b)(1).[7] In *Coblentz,* 164 Md. at 567, 166 A. 45, the Court said that secrecy is "inherent in the grand jury system with all the force of a statutory enactment." *Id.,* quoting *United States v. Edgerton,* 80 F. 374, 375 (D.C.Mont.1897). And it noted that secrecy

is found embodied in the familiar grand jury oath that the members sworn shall keep secret the counsel of the state, their fellows, and their own, and shall not present any one

---

7. "A stenographer who violates the oath of secrecy is guilty of a misdemeanor and is subject to a fine of $1,000 or imprisonment for not more than one year, or both." Md.Code (1973, 1984 Repl.Vol.), § 2–503(b)(2) of the Courts and Judicial Proceedings Article.

for envy, hatred, or malice, nor leave anyone unpresented for fear, favor, or affection, or hope of reward. 164 Md. at 567, 166 A. 45. The Court deemed the rule of secrecy to be "not merely a remedial one, that injury shown to have been sustained by the accused in a particular case shall be remedied, but also a preventive one, which interposes in advance for private benefit and public benefit as well." *Id.* The Court was aware that "[d]iscriminations between degrees of departure from [the rule] are difficult to manage...." *Id.* The Court concluded that

unless the bar is maintained in all cases, it can hardly have any effective existence. Therefore, the law must act upon the existence of opportunity, rather than await proof of abuse....

*Id. See In Re Special Investigation No. 236*, 295 Md. at 582, 458 A.2d 75.

### Exceptions to the Rule of Secrecy

In *Dennis v. United States*, 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966), the Court noted "the growing realization that disclosure, rather than suppression, of relevant materials [obtained by the grand jury] ordinarily promotes the proper administration of criminal justice." This view has been noticed by both the federal government and this State and is reflected in a rule adopted in each jurisdiction. The federal rule came first. Rule 6 of the Federal Rules of Criminal Procedure is concerned with "The Grand Jury." Subsection (e)(2), entitled "General Rule of Secrecy" prohibits the disclosure of matters occurring before the grand jury by certain persons under pain of contempt of court. Paragraph (3) sets out exceptions. Subparagraph (C)(i) reads:

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding.

Subsection (e)(5) calls for the court to "order a hearing on matters affecting a grand jury to be closed to the extent

necessary to prevent disclosure of matters occurring before a grand jury." Subsection (e)(6) provides that "[r]ecords, orders and subpoenas relating to grand jury proceedings shall be kept under seal to the extent and for such time as is necessary to prevent disclosure of matters occurring before a grand jury."

Maryland Rules 4–641 through 4–644 apply to circuit court procedures relating to criminal investigations. " 'Criminal investigation' [includes] inquiries into alleged criminal activities conducted by a grand jury...." Rule 4–641. Rule 4–642(c) provides:

> Unless disclosure of matters occurring before the grand jury is permitted by law without court authorization, a motion for disclosure of such matters shall be filed in the circuit court where the grand jury convened. If the moving party is a State's Attorney who is seeking disclosure for enforcement of the criminal law of a state or the criminal law of the United States, the hearing shall be ex parte. In all other cases, the moving party shall serve a copy of the motion upon the State's Attorney, the parties to the judicial proceeding if disclosure is sought in connection with such a proceeding, and such other persons as the court may direct. The court shall conduct a hearing if requested within 15 days after service of the motion.

Rule 4–642(a) requires that "[f]iles and records of the court relating to the conduct of criminal investigations shall be sealed and shall be open to inspection only by order of the court." Section (b) states that "[h]earings before the court relating to conduct of criminal investigations shall be on the record and shall be conducted out of the presence of all persons except those whose presence is necessary." [8]

---

8. Prior to the adoption of Rules 4–641 through 4–644 on 6 April 1984, effective 1 July 1984, there were no comparable rules in this jurisdiction. A notation following each rule reads: "Source: This Rule is new."

It is apparent that the federal disclosure rule and the Maryland disclosure rule are cut from the same cloth. They are both founded on the tenet that secrecy is inherent in the function of the grand jury. They both recognize that unwarranted intrusion on that secrecy is not to be tolerated. They both insist that generally the secrecy as to records and hearings related to matters occurring before the grand jury must be preserved. They both suggest that "[i]n the absence of a clear indication in statute or rule, the courts must always be reluctant to conclude that a breach of this secrecy has been authorized." *Sells*, 463 U.S. at 425, 103 S.Ct. at 3138. They both evidence an awareness, however, that the veil of secrecy with which the grand jury is cloaked must be lifted at times in the interest of justice. But this may be done only discretely and limitedly. In the absence of law permitting disclosure of matters occurring before the grand jury without court authorization, a court order is a condition precedent to disclosure. Neither rule, however, offers or suggests a standard under which the order shall be issued. We are informed by the Minutes of the Court of Appeals Standing Committee on Rules of Practice and Procedure of 15–16 October 1982 at p. 15 that Rule 4–642(c) "to a large extent follows the language of [Federal Rule of Criminal Procedure 6(e)(3)(C)(i) ] regarding non-disclosure and exceptions to non-disclosure" and it is indeed manifest that the lineaments of the two rules are fundamentally the same. As a practical matter the two rules are apart in only one respect. The federal rule requires that disclosure be "preliminarily or in connection with a judicial proceeding." The Maryland Rule does not have this requirement. It goes no further in that respect than to prescribe that "the parties to the judicial proceeding" shall be served with a copy of the motion for disclosure "if disclosure is sought in connection with such a proceeding."

To this time we have not been called upon to apply Rule 4–642(c). As we shall see, however, in deciding several cases presenting questions related to disclosure of grand jury matters, we have followed interpretations advanced by

the Supreme Court with respect to the federal disclosure rule. When we consider the lack of guidelines in our rule, and when we read the two rules in the light of the basis, objective, and procedures common to both of them, we are constrained to seek guidance in the Supreme Court cases relating to the federal rule. The interpretations of the Supreme Court of the federal rule are, of course, not binding on us, but, in the circumstances, they are most persuasive, and we are inclined to follow them.

We search for guidelines governing disclosure in the following cases of the Supreme Court: [9]

*United States v. John Doe, Inc. I,* 481 U.S. 102, 107 S.Ct. 1656, 95 L.Ed.2d 94 (1987);

*United States v. Sells Engineering, Inc.,* 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983);

*Illinois v. Abbott & Associates, Inc.,* 460 U.S. 557, 103 S.Ct. 1356, 75 L.Ed.2d 281 (1983);

*Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979);

*Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966);

*Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959);

*United States v. Procter & Gamble,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

### *Particularized Need*

### *Under the Federal Rule of Disclosure*

The cases are in complete accord that when a court order for disclosure is required, there must be a strong showing of a "particularized need" before disclosure is permitted. *John Doe,* 481 U.S. at 112, 107 S.Ct. at 1662; *Sells,* 463 U.S.

---

**9.** In turning to the Supreme Court, we winnow out the opinions, comments, and holdings in the cases which turn on the existence *vel non* of a "judicial hearing." *See,* for example, *United States v. Baggot,* 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983).

at 443–445, 103 S.Ct. at 3148–3149; *Abbott,* 460 U.S. at 567, 103 S.Ct. at 1361; *Douglas Oil,* 441 U.S. at 221, 99 S.Ct. at 1674; *Dennis,* 384 U.S. at 870, 86 S.Ct. at 1849; *Pittsburgh Plate Glass,* 360 U.S. at 400, 79 S.Ct. at 1241; *Procter & Gamble,* 356 U.S. at 683, 78 S.Ct. at 986.

### Under the Maryland Rule of Disclosure

[1] Even before our disclosure rule was adopted, we recognized by way of dictum the particularized need requirement for disclosure of grand jury matters. *Attorney Griev. Comm'n v. Strathen,* 287 Md. 111, 117, 411 A.2d 102 (1980). We cited as authority *Douglas Oil* and *Dennis.* In *Jones v. State,* 297 Md. 7, 464 A.2d 977 (1983), we referred to *Strathen* as an indication that "we looked with approval on the 'particularized need' requirement," *id.* at 12, 464 A.2d 977, and we applied it, *id.* at 15, 464 A.2d 977. *Martinez v. State,* 309 Md. 124, 522 A.2d 950 (1987), referred to *Jones* as authority that "a 'particularized need' exists for disclosure of grand jury testimony...." *Id.* at 142, 522 A.2d 950. Thus, it is plain that we have followed the lead of the Supreme Court and have made the particularized need requirement for disclosure a part of the case law of this State.[10]

### The Standard for Particularized Need Under the Federal Rule for Disclosure

Just as the Supreme Court has enunciated in its opinions the requirement of a particularized need for an order of disclosure, so it has set out the standard for that need in its

---

**10.** In *Martinez v. State,* 309 Md. 124, 522 A.2d 950 (1987), we held that our holding in *Jones v. State,* 297 Md. 7, 464 A.2d 977 (1983), applied to suppression hearings as well as to trial on the merits.

*Jones,* in which we applied the "particularized need" requirement noticed in *Attorney Griev. Comm'n v. Strathen,* 287 Md. 111, 411 A.2d 102 (1980), was decided before the adoption of Md. Rule 4–642(c). *Martinez,* in which we affirmed the application, was decided after the adoption of the Rule. It is manifest, therefore, that the "particularized need" requirement was not affected by the Rule and was deemed to be within its ambit.

opinions. In *Abbott,* 460 U.S. at 567, 103 S.Ct. at 1361, the Court, observing that the federal rule authorizes the trial court "to permit certain disclosures that are otherwise prohibited by the 'General Rule of Secrecy,'" pointed out that "[t]he scope of that authority has been delineated in a series of cases setting forth the standard of 'particularized need.'" The Court referred to *Douglas Oil,* 441 U.S. at 221–224, 99 S.Ct. at 1674–1676; *Procter & Gamble,* 356 U.S. at 682, 78 S.Ct. at 986, and *Pittsburgh Plate Glass,* 360 U.S. at 398–399, 79 S.Ct. at 1240–1241. It appears that the standard on which the Court looked with favor is that as enunciated in *Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674:

> From *Procter & Gamble* and *Dennis* emerges the standard for determining when the traditional secrecy of the grand jury may be broken: Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.

This standard is referred to by the Supreme Court as the *"Douglas–Oil* standard." *Sells,* 463 U.S. at 445, 103 S.Ct. at 3149. In *Procter & Gamble,* 356 U.S. at 683, 78 S.Ct. at 986, the Court indicated that the standard had been met when the grand jury transcript is sought for use at trial "to impeach a witness, to refresh his recollection, to test his credibility...." *See Dennis,* 384 U.S. at 870, 86 S.Ct. at 1849.

### The Standard for Particularized Need. Under the Maryland Rule for Disclosure

We have seen that the federal rule and the Maryland rule differ in practical effect only with respect to the use of grand jury materials "preliminarily to or in connection with a judicial proceeding." The federal rule has that require-

ment and the Maryland rule does not.[11] So we adapt the federal rule standard to our rule. We declare as the standard in Maryland for the particularized need requirement for disclosure to be as follows:

Parties seeking a court order for disclosure under Md. Rule 4–642(c) must show that:

1) the material they seek is needed to avoid a possible injustice; and

2) the need for disclosure is greater than the need for continued secrecy; and

3) their request is structured to cover only material so needed.[12]

*The General Application of the Requirement for a Showing of a Particularized Need*

(a)

*Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674, teaches that the "showing [of particularized need] must be made even when the grand jury whose [materials] are sought has concluded its operations...." The Court explained:

For in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand

---

**11.** *United States v. Baggot,* 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785, pointed out that the particularized need requirement and the requirement that disclosure be preliminarily or in connection with a judicial proceeding, "although related in some ways, are independent prerequisites." *Id.* at 480, 103 S.Ct. at 3167 (footnote omitted).

**12.** We point out that we have expressed our satisfaction with the Supreme Court view that the particularized need standard as to cross-examination purposes is satisfied without the showing of any other need. The holding of a majority of the Court in *Jones v. State,* 297 Md. at 15, 464 A.2d 977, was that

after a State's witness has testified on direct examination, a defendant is entitled to inspect the grand jury testimony for cross-examination purposes without any requirement that he show any other need.

*See Martinez v. State,* 309 Md. at 142, 522 A.2d 950; *Attorney Griev. Comm'n v. Strathen,* 287 Md. at 117, 411 A.2d 102 (dictum).

juries. Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties. Concern as to the future consequences of frank and full testimony is heightened where the witness is an employee of a company under investigation. Thus, the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.

*Id.* (footnote omitted).[13]

### (b)

Since "disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy," *Douglas Oil,* 441 U.S. at 223, 99 S.Ct. at 1675, a balancing is invoked. *See Martinez,* 309 Md. at 143, 522 A.2d 950. "The burden of demonstrating this balance rests upon the ... party seeking disclosure." *Douglas Oil,* 441 U.S. at 223, 99 S.Ct. at 1675. "[A]s the consideration justifying secrecy becomes less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Id.* "In sum," the Court concluded,

> as so often is the situation in our jurisprudence, the court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances and the standards announced by this Court.

*Id.* The Court added: "And if disclosure is ordered, the court may include protective limitations on the use of the disclosed material...." *Id.*

---

13. In *U.S. v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 234–235, 60 S.Ct. 811, 849–850, 84 L.Ed. 1129 (1940), decided before the adoption of the federal disclosure rule, the Court, after observing that "[g]rand jury testimony is ordinarily confidential," added: "But after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it." This statement was quoted in *Dennis v. United States,* 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966), and accepted as the Court's acknowledgment of the view.

The *Douglas Oil* standard is a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others.

*Sells,* 463 U.S. at 445, 103 S.Ct. at 3149. The Court continued: "[T]he standard itself accommodates any relevant considerations ... that weigh for or against disclosure in a given case." *Id.* "The particularized-need test is a criterion of *degree...."* *United States v. Baggot,* 463 U.S. 476, 480, 103 S.Ct. 3164, 3167, 77 L.Ed.2d 785 (1983) (emphasis in original).

### (c)

We learn from *Abbott,* 460 U.S. at 566–568 and nn. 14–16, 103 S.Ct. 1360–1362 and nn. 14–16; that the particularized need standard applies to disclosure to state attorneys general. *See Sells,* 463 U.S. at 444, 103 S.Ct. at 3148. *Sells* tells us that *"Abbott* and the legislative history foreclose any special dispensation from the *Douglas Oil* standard for Government agencies...." *Id.* at 445, 103 S.Ct. at 3149. But the fact that Government agencies are involved may be placed on the scale and weighed in the balance with other considerations to determine particularized need because

[n]othing in *Douglas Oil* ... requires a district court to pretend that there are no differences between governmental bodies and private parties.

*Id.* at 445, 103 S.Ct. at 3149.[14] "Of course," said the Court in *Sells,*

---

**14.** The issue before the Court in *United States v. John Doe, Inc. I,* 481 U.S. 102, 107 S.Ct. 1656, 95 L.Ed.2d 94 (1987), was "only whether an attorney who was involved in a grand jury investigation (and is therefore presumably familiar with the 'matters occurring before the grand jury') may later review that information in a manner that does not involve any further disclosure to others." *Id.* at 111, 107 S.Ct. at 1662. The Court held that the federal rule "does not require the attorney to obtain a court order before refamiliarizing himself or herself with the details of the grand jury investigation." *Id.*

it would be of substantial help to a Justice Department civil attorney if he had free access to a storehouse of evidence compiled by a grand jury; but that is of a different order from the prosecutor's need for access. The civil lawyer's need is ordinarily nothing more than a matter of saving time and expense. The same argument could be made for access on behalf of any lawyer in another Government agency, or indeed, in private practice. We have consistently rejected the argument that such savings can justify a breach of grand jury secrecy.

*Sells*, 463 U.S. at 431, 103 S.Ct. at 3142. The Court added:

In most cases, the same evidence that could be obtained from the grand jury will be available through ordinary discovery or other routine avenues of investigation. If, in a particular case, ordinary discovery is insufficient for some reason, the Government may request disclosure under [the federal order].

*Id.* "In short," the Court, declared,

if grand juries are to be granted extraordinary powers of investigation because of the difficulty and importance of their task, the use of those powers ought to be limited as far as reasonably possible to the accomplishment of the task.

*Id.* at 434–435, 103 S.Ct. at 3143–3144. And, the Court made clear, the fact that grand jury materials sought for disclosure are "rationally related" to a civil fraud suit to be brought by the federal government is insufficient, in itself, under the *Douglas Oil* standard. *Id.* at 445, 103 S.Ct. at 3149. It seems, however, that a "rational relationship" may be included in the balancing process.

### (d)

When all is said and done, "disclosure [is] committed to the discretion of the trial judge." *Pittsburgh Plate Glass,*

---

The Court did not address "the very different matter of an attorney's disclosing grand jury information to others, inadvertently or purposefully, in the course of a civil proceeding. . . ." *Id.*

360 U.S. at 399, 79 S.Ct. at 1240. The federal disclosure rule "is but declaratory of [this principle]," *id.*, as is the Maryland rule. *Douglas Oil*, 441 U.S. at 223, 99 S.Ct. at 1675, emphasized that

a court called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion.

## THE APPLICATION OF THE MARYLAND DISCLOSURE RULE

## TO THE CASE SUB JUDICE

### The Trial Court

In his remarks leading to the conclusion that disclosure should be permitted as requested by the State, the trial judge observed that in response to fifty subpoenas issued by the grand jury in the course of its criminal investigation concerning payments by Medicaid to the pharmacy "approximately twelve banker's boxes of materials" were obtained. The judge estimated that "there were a hundred thousand prescriptions in many of those" and a plethora of computer printouts and other documents.[15] But, noted the judge, "out of all those documents which were submitted," the State is requesting only "112 documents . . . and daily prescription receipts, computer printouts" for two stores covering a period of six months "be released from grand jury secrecy and be permitted to be disclosed to [the federal government]." The judge said:

The argument is made that the disclosure of this material is particularized, that grand jury secrecy would not

---

**15.** The judge later observed:

When it's reported to the Court, in the State's response to [the pharmacy's] disclosure, that during the short month of February of I believe it's . . . '86, the printout for the month alone is 10 inches high, weighs over 30 pounds, contains 85,344 entries and represents 11,324 kilobytes, B–Y–T–E–S, that's on a short month and I believe it was a 27–day month, that did not have the leap year day in it, that's one whale of a lot of information, and that's not a legal term but it's a vernacular which I think pretty much describes the amount of information that is involved.

be compromised by disclosing these documents as they are an infinitesimal part of the total submissions in response to the total grand jury subpoenas. The argument is made that the grand jury has concluded its life, that there were no witnesses who testified, so there's no testamentary evidence to be transmitted, and that these documents being such an infinitesimal part of grand jury investigation would not in any way compromise or indicate to any person outside that grand jury or outside the confines of those parties in this court what the workings of the grand jury were.

The judge found the arguments to be persuasive and explained why:

The grand jury is out of existence. Looking at these records, which records are required to be kept in the ordinary course of business of being a part of the medicaid program by [the pharmacy] and records required to be kept by [the employee] ... cannot by any stretch of the imagination, if they are disclosed, show that they were in any way even submitted to a grand jury, much less have been a part of the grand jury process.

With respect to the computer printouts, the judge observed:

The computer printouts are the end result of all of the information contained on the prescription forms and it was [the pharmacy's] choice to use the computer printouts without the back-up documents which are the prescription onionskins. These computer printouts are about 4 inches, maybe 5, just looking at them, and would be I guess about one-eighth or one-sixth of a banker's box of material of a total twelve boxes which are received. In no way would they compromise the secrecy of the grand jury by turning them over or disclosing them to the [federal government].

The judge discussed other arguments made:

The argument is advanced by the [pharmacy and the employee] that to disclose these documents is to violate

the secrecy of the grand jury and to make the grand jury a civil investigative arm of a federal agency. The argument is that once these items have been turned into the grand jury in response to the subpoena, that they can no longer be transmitted further without violating the rule of grand jury secrecy and that it is to protect those investigated as well as those against who no indictment has been returned. No indictment has been returned, that is true, and the parties who were the subjects of investigation have not been made public and that is true. The judge referred to the particularized need requirement and pointed out that to date the Court of Appeals cases as to the requirement were only with respect to testimony before the grand jury for use in criminal proceedings. The judge distinguished those cases:

We don't have testimony here. Consequently, in this Court's view at least, there would appear to be absolutely no indication to [the federal government] that the material being disclosed would show the workings of the grand jury, the process of the grand jury, what took place before the grand jury or what testimony was given before the grand jury, and in fact would not invade the secrecy of the grand jury at all.

The judge added:

One further comment in that area. These are records which have been kept and had to have been kept under law in the ordinary course of business extrinsic of grand jury, and do not have a life only because of the grand jury, but had a life before the grand jury came into existence and have a continuing life for the statutory period under which they're required to be kept, so that, again, disclosure would not compromise in any way, in this Court's view, the secrecy of the grand jury.

The judge continued:

Quite the contrary. It would further the purposes for which the State is requesting the disclosure of these documents to the [federal government] and that is in accord with the law which requires that the State and the

Federal Government share equally the cost of paying for the medicaid prescriptions in the medicaid program, and that as a possible rollover or end result of cooperation, the State is charged under federal law with determining if there are any problems with reference to fraud and the submission of medicaid invoices, and if so, then the CMPL [ (federal Civil Monetary Penalties Law) ] Unit was set up specifically to handle those areas or those cases where the Department of Justice, which is referred to as the DOJ, declines prosecution. That isn't to say that one remedy, the criminal remedy, would be exclusive of a civil remedy.

Quite the contrary. If the DOJ did decide to prosecute, CMPL would also be able to carry out their civil remedies at the same time or subsequent to any criminal prosecution.

The judge made clear, however, that

[i]n this case, there's no suggestion that there will be any criminal prosecution. Quite the contrary. The Attorney General's Office declines to prosecute and under those circumstances, it would not appear likely to this Court that there would ever be a criminal prosecution; however, the possible penalties to be imposed by CMPL, which have been referred to by the respondent as draconian, could conceivably be imposed.

The judge did not "know what the CMPL Unit's track record has been in terms of what they do with the material that they receive in these situations which would leave them to take action. . . ." But he was fully aware of the possible consequences.

[T]here would be a $2,000 per prescription penalty which would make it $224,000 and then a double billing of the $1311 which would make that $2622 which would make a total monetary penalty that CMPL could impose would be $226,622, but more than that, CMPL could disqualify [the pharmacy] from any further involvement in the medicaid program. That could have a severe financial impact on [the pharmacy]. Of that, there can be no question.

The bottom line was that "the court believe[d] that, under all the circumstances, disclosure should be permitted of the documents which have been the subject of the hearing...."

In fairness to the pharmacy and the employee, however, the judge decided to "stay the effect of this order...." He said:

It would just seem to me logical and reasonable that, since this is a case of first impression and I believe it truly is a case of first impression, that it would be foolish on this Court's part not to order the stay of the effect of this order pending a final decision.... I just believe that what I say is obviously not the final word and I would not want it to be. I would want to have this matter very carefully reviewed by the Court of Special Appeals and the Court of Appeals, if necessary, and I suspect that it will ultimately reach that level, so that there would be guidance in the future on these kinds of cases, because I anticipate that there will be more of them, and as the Judge charged in this Circuit with the responsibility of hearing the grand jury cases, I would like to have the guidance of the Court of Special Appeals and the Court of Appeals to follow in these areas.

### The Order of Disclosure

The order of 20 July 1988 granted the State's Motion for Disclosure of Grand Jury Materials. The order authorized

[t]he Medicaid Fraud Control Unit of the Attorney General's Office ... to disclose the documents identified on page 7 of its Motion and Exhibit A thereto, to the United States Departments of Justice and Health and Human Services for the purpose of pursuing the remedies authorized under the Civil Monetary Penalties Law, 42 U.S.C. § 1320a–7a.

The documents identified on page 7 of the motion were:

1. The first manifold copy of the prescriptions listed on Exhibit A. Manifold prescription forms are frequently the actual invoice submitted to Medicaid by a participating pharmacy. In this case, since [the pharmacy] billed

[the State Medicaid program] by computer, they merely substantiate the computer billing and the pharmacy's legal and ethical right to dispense the medication.

2. [The pharmacy's] daily prescription report for [two designated] stores for October 1, 1985 through March 31, 1986. These daily reports are a summary of all information entered into the computer each day. In addition to containing Medicaid billing information, they identify the pharmacist filling or refilling the prescription, the number of pills which remain on the prescription, and the manner in which the pharmacy was paid for the prescription.

Exhibit A listed 112 prescriptions filled in two stores. The list set out the prescription number, the name of the patient, the date the prescription was originally filled, the date it was refilled, the cost, and the store in which it was filled. The total amount involved was $1,311.54. The order stayed the disclosure permitted "until the issuance of the mandate of the Court of Special Appeals in the appeal of this matter and, if certiorari is granted, the mandate of the Court of Appeals...." The order further provided: "This proceeding and all other pleadings thereto are hereby sealed."

### The Letter of Transmittal

Two days after the order authorizing disclosure to the federal government, the State filed a "Motion for Appropriate Relief (Motion to Supplement Record)." The State sought permission to forward the documents with an explanatory letter. The request had been anticipated by counsel for the pharmacy and the employee and was questioned at the conclusion of the hearing on the motion to disclose. Counsel asked the judge whether he was going to permit the State as a part of its disclosure to the federal government to provide

the summaries of the documents, its analysis of the documents which is prepared in the grand jury sessions and during the grand jury process, and to comment on the nature of a report or cover letter explaining what we

have here, other than just dropping the documents into an envelope and sending them....

At the judge's request the State responded. It explained that

the only summary or analysis prepared by Medicaid Fraud Unit investigators during the course of the investigation is contained as Exhibit A to the disclosure motion. It is a summary of the name of the prescription, the date of the original prescription was submitted and paid, and the date that the unauthorized refill was submitted and paid.

With reference to statements made by the pharmacy's counsel and the head of the pharmacy unit, the State's position was that the statements were outside the grand jury and that they could be put in letter form and submitted to the federal government. The judge pointed out that the "other items you talk about [apparently the statements] have already been agreed by the respondents not to be subject to this court's jurisdiction...." The judge declared that he was not going to comment on those. Counsel for the employee made it clear "for the record that [he] had not conceded ... that the interviews with [the pharmacy officials] were not testimonial or not protected by the grand jury." Counsel for the pharmacy made clear that he was concerned with the contents of any cover letter—"[t]hey're going to write a narrative." He told the judge:

I am very concerned about the cover letter. I'm very concerned about the narrative and I'm concerned about the grand jury secrecy in relation thereto.

He took the judge's comments as an indication that the judge was going to order that the State

may construct a narrative report relating to the interpretation of [the] documents [permitted to be disclosed] made by [the State's] agents during the course of their investigation of the grand jury subpoenas and on the basis of documents which were produced in response to those subpoenas. [The State] can transmit that narrative and transmit and make that disclosure.

Asked by the court to comment, counsel for the State gave assurance

> that beyond what is appended to the disclosure motion, there are no reports, interpretations, summaries or anything else of the fact of the grand jury investigation, what took place before the grand jury, the analysis and the documents received from the grand jury.

But, counsel for the State conceded, there was additional information that she planned to disclose. She said:

> I contemplate sending to the [federal government] or otherwise making available to anyone else ... the statements of [the pharmacy's] counsel as to why the documents were destroyed.... These are statements of counsel made voluntarily without the service of a grand jury subpoena, without there even being a suggestion that anyone should come in and testify before the grand jury. They were made to me. They were not made to an investigator as an interview in order to find out what went on in the [pharmacy's] stores in furtherance of grand jury investigation.

The order of 20 July 1988, permitting disclosure, did not embrace a letter of transmittal.

Appended as Exhibit B to the State's Motion to Supplement the Record was a proposed letter of transmittal. The motion called attention to the suggestion at the hearing on the Motion for Disclosure by counsel for the pharmacy and the employee that "any transmittal letter explaining documents which the court ordered disclosed might bear on the issues before [the trial] court and the appeals courts." The Motion to Supplement the Record stated that, therefore, counsel for the pharmacy and the employee

> consent to the supplementation of the record [by inclusion of the letter of transmittal], but do not thereby consent to any disclosure or transmittal of the contents of Exhibit B.

Without further comment on the record, the judge granted the Motion to Supplement the Record the same day it was

proffered by endorsing thereon "SO ORDERED," and thereby approved the proposed letter of transmittal.

The transmittal letter was addressed to the "Regional Inspector General for Investigations, Dept. of Health and Human Services," under date of 18 July 1988. It enclosed a copy of the order for disclosure issued by the Circuit Court for Baltimore City, and the documents to be disclosed, "so that the Department of Health and Human Services could pursue any action it deems appropriate under the Civil Monetary Penalties Law." It warned:

> The Order ... strictly limits the use of the documents transmitted herewith to Civil Monetary Penalties Law proceedings against the [pharmacy] and/or [its named pharmacists employee]. Any other use constitutes a violation of the Grand Jury secrecy laws and rules of the State of Maryland, and of the orders of ... the Circuit Court for Baltimore City.

The letter explained that three sets of documents were transmitted and described each set. The first set of documents consisted of

> [o]ne hundred twelve (112) original prescription forms. These are Maryland Medical Assistance prescriptions filled by [two of the pharmacy's stores].... Exhibit A (to the Disclosure Motion) identifies these 112 prescriptions by:
>
> a. Prescription number;
>
> b. Medical Assistance recipient;
>
> c. Type of medication and dosage;
>
> d. Date the prescription was filled;
>
> e. Date the prescription was allegedly refilled;
>
> f. The amount which Medical Assistance paid on the refill claim; and
>
> g. The store, identified by number, which refilled the prescription.
>
> These prescriptions were received from [the pharmacy].

The prescriptions are being forwarded for Civil Monetary Penalties Unit consideration as evidence of false claims

because, as is facially evident, these prescriptions do not contain any authorized refills.

The second set of documents consisted of

[the pharmacy's] daily prescription audit reports for [a designated store] for the dates October 1, 1985 through March 31, 1986. Separate reports are prepared for each day's prescriptions. Each daily report lists the prescriptions by prescription number. Other information included in the report is:

a. The method of payment (this information included under the column headed "Plan");

b. The [employee] pharmacist who filled or refilled the prescription ("RPH");

c. The number of pills or milliliters remaining on the prescription ("Remain. Qty");

d. Whether the entry denotes an original prescription, a refilling, or a deletion. This information is contained under the heading "Typ". No entry indicates an original prescription, "R" indicates a refilling, and "D" indicates a deletion.

The data base for these reports is also used for the computerized billings submitted to the Maryland Medical Assistance Program (Medicaid).

The letter gave the name of the employee pharmacist "shown as submitting the refill claims for the 112 prescriptions forwarded herewith and identified on the daily prescription reports [by initials]."

The third set of documents consisted of

[d]aily prescription audit report for [a designated store] for the period October 1, 1985 through March 31, 1985. This is a single report listing all prescriptions filled during that six month period by prescription number.

The letter explained:

This report was prepared by [the pharmacy] after the daily reports similar to those presented for [the other designated store] were destroyed. Although the daily reports were subject to a grand jury subpoena, [the

pharmacy] retained possession of the original document pursuant to an agreement between the Medicaid Fraud Control Unit of the Attorney General's Office and [the] Executive Vice–President and Counsel for [the pharmacy]. The Attorney General's Office was assured by [the Executive Vice–President and the pharmacy's] District Manager ... that the documents would be properly preserved while retained by [the store]. The Attorney General was further assured that all computer information contained on these documents was protected against loss or tampering because the pharmacy computers were programmed to retain all information which a pharmacist attempted to delete, including making a record of the attempted deletion. Nevertheless, when possession of the daily audit reports for [one designated store] was sought by the Attorney General's Office, the office was advised that:

 a. The daily prescription audit reports had been recently destroyed;

 b. The pharmacists destroying the documents were not aware of the agreement between [the pharmacy's] counsel and the Attorney General's Office;

 c. All cash sales had since been deleted from the computers; and

 d. There was no fail safe mechanism for recovering this deleted information as had been originally communicated to the Attorney General's Office.

The document which is transmitted herewith for [the store whose documents were destroyed] was prepared by [the pharmacy] from the information remaining on the computer and, with the exception of all cash sales, contains the same information as that described above for the daily prescription audit reports for [the other designated store].

The transmittal letter concluded by informing the federal government that

 Maryland Medical Assistance Program payment histories proving paid claims for both original prescriptions

and refills and summarized on Exhibit A are available for your inspection at the Office of the Attorney General, Medicaid Fraud Control Unit, ... or may be obtained from the Department of Health and Mental Hygiene.

## THE DECISION

■ In the light of all we have discussed concerning the grand jury process, we approach the determination whether the trial court erred in ordering disclosure and authorizing the letter of transmittal with the following givens:

1) Secrecy is inherent in the grand jury system.

2) The general rule of secrecy may be breached by an order of court pursuant to Md. Rule 4–642(c).

3) Disclosure of grand jury proceedings *vel non* is within the sound discretion of the trial judge.

The trial judge is to be guided by the following principles in the exercise of his discretion:

a) The party seeking disclosure by an order of court must show a particularized need for breaching the general rule of secrecy.

b) The standard for the particularized need requirement is:

i) the material sought to be disclosed is needed to avoid a possible injustice; and

ii) the need for disclosure is greater than the need for continued secrecy; and

iii) the request to disclose covers only materials so needed.

The standard for the particularized need requirement involves a balancing. The standard is a criterion of degree; it accommodates any relevant considerations that weigh for or against disclosure in a given case. Generally, among the considerations which may be placed on the scale are

1) the need to protect the unindicted individual from disclosure;

2) the grand jury has concluded its operations;

3) the particularized need requirement applies to civil governmental agencies as well as to private parties;

4) the materials sought for disclosure are rationally related to the civil proceedings contemplated;

5) the materials sought may be available through ordinary discovery or other routine avenues of investigation;

6) disclosure will save time and expense;

7) no indictments were returned as a result of the grand jury's investigation.

None of these considerations, in itself, is usually sufficient to show that there is or is not a particularized need for disclosure. But each consideration, balanced with other considerations, may weigh for or against disclosure. The weight afforded by the consideration depends upon the particular circumstances. The bottom line is that disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy.

■ In our review, pursuant to Md. Rule 8–131(c), we glean from the remarks of the trial judge leading to his order, set out in detail *supra*, that his decision was consistent with the law as we have found it to be. We are satisfied that there was a sufficient basis for the judge to find, upon balancing the relevant factors, that the three prongs of the standard to establish a particularized need for disclosure had been met by the State. Therefore, his judgment on the evidence was warranted, and we shall not disturb it. It follows that there was no abuse of judicial discretion. We hold that the judge did not err in ordering the disclosure.

We are not persuaded to a contrary view by the arguments of appellants. We first observe that we are of a mind with them as to the general rule for grand jury secrecy and the need for the rule. Also, we are in agreement as to the requirement to show a particularized need. But the record does not show, as appellants suggest, that the trial court "disregarded this requirement, and its common law underpinnings, by granting the Attorney General's

motions." And in the light of the standard we have enunciated for a particularized need, and the guidelines to be followed and the principles to be considered, we do not believe that the granting of the motions here will "open the door to automatic disclosure of grand jury materials for civil purposes anytime the disclosure was alleged to be 'in the public interest.' "

In arguing that the trial court erred, appellants claim that the State failed to make a clear showing of "particularized need" when there has been no indictment. They challenge five reasons advanced by the State and deem them to have been adopted by the trial judge for disclosure of grand jury materials for civil purposes, namely that disclosure

1) is in the public interest for fiscal purposes;

2) is convenient for state-federal cooperation in the enforcement of civil laws;

3) deters other providers from similar acts and omissions;

4) is not offensive because the grand jury investigation had ended;

5) barely implicated grand jury secrecy here because it was "sought only for 'documents' not transcripts of witness testimony."

Appellants declare:

Most of the arguments advanced by the Attorney General have been expressly rejected as establishing particularized need, and several are inconsistent with the reasons why grand jury matters are kept secret.

We do not interpret the Supreme Court cases as appellants construe them. It may be that none of the State's reasons considered by itself is sufficient to establish a particularized need. But, as we have indicated, neither are any of them, alone, enough to show that there is no particularized need. The considerations behind the reasons are to be balanced and weighed according to the circumstances. Then it may be seen which way the scale tips—for disclosure or against disclosure. Appellants tie the third and fourth reasons into

the failure of the grand jury to return indictments. There is no indication that the grand jury investigation was other than a *bona fide* criminal investigation. The Supreme Court's comments in *Procter & Gamble*, 356 U.S. at 683–684, 78 S.Ct. at 987, are appropriate:

> There is no finding that the grand jury proceeding was used as a short cut to goals otherwise barred or more difficult to reach. It is true that no indictment was returned in the present case. But that is no reflection on the integrity of the prosecution. For all we know, the trails that looked fresh at the start faded along the way. What seemed at the beginning to be a case with a criminal cast apparently took on a different character as the events and transactions were disclosed. The fact that a criminal case failed does not mean that the evidence obtained could not be used in a civil case.

As to the fifth reason, we do not quarrel with the view that the documents ordered disclosed, considered with the letter of transmittal, were within the grand jury proceedings. The documents did tend to reveal the nature, scope, subjects, and direction of the grand jury investigation. But that was why an order pursuant to Md. Rule 4-642(c) was required and why a particularized need had to be shown to support the order.

Appellants urge that the State's Motion for Disclosure was premature because the grand jury materials were not sought for use in connection with a judicial proceeding. They

> recognize that the requirement that grand jury materials be sought "prelminary to or in connection with a judicial proceeding" is expressly set out in ... the Federal Rules, while in contrast, Maryland Rule 4-642(c) does not contain such an express requirement. [footnote omitted]

They assert: "Such a requirement, however, is implicit in Maryland's common law of grand jury secrecy." We do not think that it is. Merely because the two cases in which we addressed the particularized need requirement for disclosure were in the factual posture of a judicial proceeding

does not read the necessity for a judicial proceeding into our common law. The Rules Committee had the federal rule before it when it drafted Md. Rule 4–642(c). This Court was aware of the provision in the federal rule when it adopted the proposal of its Committee. Neither the Committee nor this Court chose to include a "judicial proceedings" requirement in the Maryland rule. Even on the assumption that the disclosure sought here was not preliminary to or in connection with a judicial proceeding, that fact, under the particular circumstances here and in the face of our Rules, is not entitled to be weighed in the determination of a particularized need.

Appellants' final contention is that disclosure should have been denied because the State "sought to use grand jury information to make an unauthorized civil presentment." They declaim that in

> stark terms, the Attorney General seeks in its actual transmittal letter (a) to brand the [pharmacy] with misconduct and (b) accuse its professional employees of criminal conduct despite the absence of a grand jury indictment.

Of course, as we have seen *supra,* it is correct that the long-established rule is that if a grand jury does not indict, it may not publicly criticize. Appellants assert that

> [t]he Attorney General should not be heard to contend that the rule ... is inapplicable to this case because the Attorney General, and not the grand jury, intends to present the written charges against Appellants to the federal agency.

We do not hear the Attorney General to that effect. And we agree that

> [t]he entire investigation was under the cloak of the grand jury which compelled the production of information by its subpoena process.

And we do not quarrel with the statement that

> [t]he Attorney General cannot use the power of the grand jury to obtain and develop information and then claim

that its investigation was "independent" of the grand jury.

We have detailed the contents of the letter of transmittal earlier in this opinion. We do not see it in the same light as do appellants. Appellants do not pinpoint the "stark terms" in the letter which appear to them to brand the pharmacy with misconduct and its professional employees with criminal conduct.

The notion that the Attorney General sought to brand the pharmacy with misconduct probably was prompted by the explanation in the letter with reference to the prescriptions. It reads:

> The prescriptions are being forwarded for Civil Monetary Penalties Unit consideration as evidence of false claims because, as is facially evident, these prescriptions do not contain any authorized refills.

Inherent in the approval of the letter of transmittal by the trial judge is that he did not deem this explanation to constitute an open and public accusation of misconduct on the part of the pharmacy. The explanation did not present a conclusion reached by the grand jury. It simply called attention to what was obvious on the face of the prescriptions—that they did not contain "any authorized refills." Therefore, the Civil Monetary Penalties Unit could consider them, if it chose to do so, as evidence of false claims. We cannot say that the judge's approval of this explanation was erroneous.

The claim that the State accuses the pharmacy's professional employees of criminal conduct apparently stems from the part of the letter concerning certain documents which were not enclosed. The letter explains that the pharmacy was permitted to retain possession of the subpoenaed daily reports of one of the stores by agreement between the State and the pharmacy. The State was assured by officials of the pharmacy that the documents would be "properly preserved" and that "all computer information contained

on these documents was protected against loss or tampering because the pharmacy computers were programmed to retain all information which a pharmacist attempted to delete, including making a record of the attempted deletion." Later, when the State sought possession of the documents, the State was informed the daily prescription audit reports had been destroyed by pharmacist employees who "were not aware of the agreement...." Furthermore, "[a]ll cash sales had since been deleted from the computers," and "[t]here was no fail safe mechanism for recovering this deleted information...." Nevertheless, the pharmacy was able to prepare a single report covering the period represented by the destroyed documents "from the information remaining on the computer...." The letter stated that "with the exception of all cash sales, [the report] contains the same information as that described above for the daily prescription audit reports for [the other store]." Even if the destruction of the documents were illegal in the circumstances, the part of the letter concerning it was far from an accusation of criminal conduct. The State was careful to point out that the employees destroying the documents were not aware of the agreement to preserve them. The letter gave a purely factual account providing a necessary explanation of why certain documents were not forwarded. The judge had accepted the explanation and had not placed the destruction of the documents in the balancing process. His judgment in approving the explanation appearing in the letter of transmittal was not erroneous.

We hold that the trial judge did not abuse his discretion in the orders of 20 July and 22 July 1988 permitting disclosure.

JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED;

COSTS TO BE PAID BY APPELLANTS.